## BROWN *against* GREEN and NOYES:

### IN ERROR.

Where an award is within the submission, a court of chancery will not set it aside, except for partiality and corruption in the arbitrators, mistakes on their own principles, or fraud and misbehaviour in the parties.

THIS was a bill in chancery, brought by *Brown* against *Green* and *Noyes,* to set aside an award of arbitrators, and to stay proceedings at law on two promissory notes given to enforce performance of such award. Both the submission and the award were in writing, and were set forth at length in the plaintiff's bill. The submission was as follows : " This agreement made and entered into by and between *Samuel Green* of *New-London* and *William Noyes,* jun. of *Lyme,* on the one part, and *Robert Brown* of *Waterford,* on the other part, *witnesseth,*

" That whereas diverse controversies have arisen between the parties, in relation to *Niantic* bridge, and an award has been made between the said *Green* and the said *Brown,* and also an award between the said *Noyes* and the said *Brown,* and a suit commenced in favour of the said *Noyes* upon the last mentioned award, which suit was withdrawn, upon entering into a new submission, by the parties hereto, which last submission is claimed, by the said *Noyes* and *Green,* to have been revoked, by the said *Brown.*

" Now, therefore, for the purpose of putting an end to said controversies, the parties hereby agree to submit the same, and

all costs in said suit, and the costs and damages upon said sub-
mission, and all other matters in dispute between the parties,
of every name, nature and description relating to said bridge,
between the said *Brown* and the said *Green* and *Noyes*, and
each of them, to the award, arbitrament and final determina-
tion of *Moses Warren*, *Charles J. McCurdy* and *Joseph
Chadwick*, Esqrs., arbitrators mutually agreed on between the
parties.

" And the parties hereby agree, that the said arbitrators shall
not be concluded by the aforesaid award, but may examine and
settle all matters in dispute between the parties in relation to
said bridge ; that they shall appraise that part of said bridge
claimed by said *Green* and *Noyes*, and shall examine and settle
all accounts relative to the re-building and repairing of said
bridge, and the rents and profits of the same, as well before as
subsequent to the making of said award ; and in case a balance
shall be found in favour of said *Brown*, the same shall be de-
ducted from the value of the part of said bridge claimed by
said *Green* and *Noyes ;* and if the balance shall be in favour
of said *Green* and *Noyes*, or either of them, the same shall be
added to the value of said part of said bridge ; and said arbi-
trators shall also determine the matter of costs in said suit, and
also the matter of costs and damages upon said submission, and
also the costs of the arbitration ; and the part of said bridge
claimed by said *Green* and *Noyes*, shall be conveyed to the
said *Brown*, and the said *Brown* shall pay the said *Green* and
*Noyes* therefor, according to the award of said arbitrators.

" And for the purpose of more effectually carrying into exe-
cution this agreement, the said *Brown* shall make and execute
a joint and several note, signed by himself and his brother
*Henry Brown*, payable to said *Green* and *Noyes*, on demand,
with interest, in the sum of 200 dollars, and also his the said
*Brown's* note for 500 dollars, payable on demand with interest,
and shall deposite said notes in the hands of *Charles J. Mc-
Curdy*, one of the said arbitrators, on or before the 19th day
of *April* inst.   And the said *Green* and *Noyes*, on their part,
shall execute to the said *Brown* their joint and several note,
payable to the said *Brown*, on demand, with interest, in the
sum of 700 dollars, and shall deposite the same with said *Mc
Curdy*, on or before the 23rd of *April* inst.   And in case said
arbitrators shall find a balance in favour of said *Brown* over
and above said *Green* and *Noyes's* part of said bridge, as

claimed by them, they shall indorse said *Green* and *Noyes's* note down to said balance, and shall thereupon deliver said note to said *Brown;* and the said *Green* and *Noyes* shall also convey to said *Brown* their said part of said bridge. On the other hand, in case said arbitrators shall find a balance in favour of said *Green* and *Noyes,* or either of them, including the part of said bridge claimed by them, the said arbitrators shall indorse the said *Brown's* notes down to said balance, and shall thereupon deliver the same to said *Noyes* and *Green,* together with their note ; and in case said arbitrators shall find in favour of said *Green* and *Noyes,* or either of them, a greater sum than 200 dollars, no indorsement shall be made upon the said *Robert* and *Henry's* note, but whatever indorsement may be made, shall be made upon the said *Robert's* own note.

" The said *Green* and *Noyes* shall, upon the making of said award, and notice to them, convey to the said *Brown* one quarter of said bridge, by a quit-claim deed from said *Noyes,* and a deed with warranty from said *Green,* under the incumbrance of the mortgage to said *Noyes,* and the said *Brown* shall thereupon immediately mortgage the said quarter back to the said *Green* and *Noyes* to secure the payment of his said notes according to their tenor and effect. And said *Green* and *Noyes* shall not be required to give said conveyance to said *Brown* until he is ready immediately thereupon to give said mortgage ; nor shall they be required to give said conveyance, unless said *Brown* is ready and willing to perform this agreement respecting said mortgage within thirty days from the making of said award.

"In case the said *Robert* shall neglect or refuse to fulfil this submission, the note signed by himself and said *Henry* shall be considered and holden as security for all damages the said *Green* and *Noyes* may sustain, by reason of the non-fulfilment or non-performance of this agreement.

" The arbitrators shall meet at the dwelling-house of *Avery Smith* in *Waterford,* on the 24th of *April* inst. at 10 o'clock A. M., or at any other time and place they may appoint, between the date hereof and the 29th of *April* inst., and may make and publish their award, in writing or by parol, at their pleasure, at any time between the date hereof and the 29th of *April* inst.

" In case the said *Noyes* and *Green* shall neglect and refuse to perform and fulfil this agreement on their part, they shall be

liable on their note for all damages the said *Robert* may sustain, by means of the non-fulfilment or non-performance of this agreement.

"An award from the said arbitrators, or any two of them, shall be binding and conclusive upon the parties; and said arbitrators may examine and settle the account about the building and repairs of said bridge, and the rents and profits of the same, as though no award had heretofore been made relating to them.

"In witness whereof, we, the parties, have hereto set our hands, this 17th day of *April*, 1828.

> *Robert Brown,*
> *William Noyes, jun.*
> *Samuel Green."*

The arbitrators met within the time and at the place mentioned in the submission, and having heard the parties, made and published the following award: "We, the subscribers, having been appointed arbitrators, to determine certain controversies between *Samuel Green* and *William Noyes*, jun., and each of them, on the one part, and *Robert Brown*, on the other part, relative to *Niantic* bridge, and divers matters connected therewith, as may more particularly appear by their submission, dated the 17th of *April*, 1828; and having taken upon us the burden of said arbitration, and having met and heard the parties and their counsel, and examined their exhibits, at the time and place mentioned in said submission, and having adjourned to meet at the office of *Charles J. McCurdy* in *Lyme*, this 28th day of *April* 1828, do now, on the subject matter of said submission, find,

"1. That on the account relating to the rebuilding and repairing of said bridge, and the rents and profits of the same, as well before as subsequent to the making of certain awards, as mentioned in said submission, and which we have examined and settled, as if no such awards had heretofore been made, there is a balance of 102 dollars, 69 cents, due from the said *Brown* to the said *Green* and *Noyes*, and either of them.

"2. We appraise that part of said bridge claimed by said *Green* and *Noyes*, being the one fourth part, and which part we find they own, at the sum of 325 dollars; which last sum, added to the balance of account, as above found, amounts to the sum of 427 dollars, 69 cents. And we thereupon order and award, that the said *Brown* pay to them, the said *Green* and *Noyes*, the last aforesaid sum of 427 dollars, 69 cents.

*New-London,*
*July, 1829.*

Brown
*v.*
Green and
Noyes.

"3. We decide, adjudge and award, that the said *Brown* pay to the said *Noyes,* his the said *Noyes's* costs in the suit mentioned in the said submission, being the sum of 16 dollars; likewise his costs and damages on a former submission mentioned in said submission, being the sum of 8 dollars; as also his costs in this arbitration, being (exclusive of our fees and expenses) the sum of 41 dollars, 39 cents; amounting in the whole to the sum of 65 dollars, 39 cents.

"4. The parties having deposited with the said *Mc Curdy,* one of the arbitrators, their notes, as agreed in said submission, and within the time therein required, and we having found a balance in favour of said *Green* and *Noyes,* which, including the part of the bridge claimed by them, amounts to the sum of 427 dollars, 39 cents; we, therefore, in pursuance of said submission, leave the joint note of *Robert Brown* and *Henry Brown,* mentioned in said submission, payable in full, and indorse the said note of the said *Robert Brown* down to the sum of 227 dollars, 39 cents, that being the excess of said sum of 427 dollars, 69 cents, over the said joint note, at this time.

"Further, in pursuance of said submission, we direct, order and award, that the said *Green* and *Noyes* shall, upon the making of this award, and notice to them, convey to the said *Robert Brown* one quarter of said bridge, by a quit-claim deed from said *Noyes,* and a deed with warranty from said *Green,* under the incumbrance of the mortgage to said *Noyes;* and the said *Brown* shall thereupon immediately mortgage the said quarter back to the said *Noyes* and *Green* to secure the payment of his notes according to their tenor and effect. And the said *Green* and *Noyes* shall not be required to give said conveyances to said *Brown* until the said *Brown* is ready immediately thereupon to give said mortgage; nor shall they be required to give said conveyances, unless said *Brown* is ready and willing to perform the agreement respecting said mortgage, as contained in said submission, within thirty days from the making of this award.

"Made and published, this 28th day of *April,* 1828.

*Moses Warren,*

*Joseph Chadwick,* ⎫ Arbitrators."

*Charles J. Mc Curdy,* ⎭

The plaintiff averred in his blll, as grounds of relief, that there never was, in point of fact, nor was it claimed before the arbitrators that there had ever been, any common interest be-

tween *Green* and *Noyes*, in any claim against the plaintiff; that there were no other matters in controversy before the arbitrators than the ownership of one fourth part of the bridge, as claimed by *Green*, and the rents, profits and expenses thereof; that *Noyes* never had, or claimed before the arbitrators to have, any interest in the bridge, except as mortgagee under a mortgage deed of one fourth part from *Green* to him; that in truth, *Green* had no interest whatever in the bridge, and that the only evidence of any title, which he exhibited before the arbitrators, was a deed to him from one *Downer* of a certain part of the bridge, but there was no proof, nor is the fact so, that *Downer* himself ever had any title to any part of the bridge; that the plaintiff claimed title to the whole of the bridge, not under *Downer*, but adversely to him; nevertheless, the arbitrators found the title to one fourth part in *Green*, on no other evidence than *Downer's* deed; that *Niantic* bridge is real estate, consisting of land on each side of *Niantic* river connected by a bridge; that on the submission, for the revocation of which 8 dollars damages were awarded to *Noyes*, one of the arbitrators refused to act; that *Green* and *Noyes* have commenced suits by attachment, against the plaintiff, on the arbitration notes, which are pending in court, &c.

To this bill there was a general demurrer; and the superior court sustained the demurrer, and dismissed the bill with costs. On motion of the plaintiff, the cause was then removed to this Court, for revision in error.

*Isham*, for the plaintiff, after premising, that where the demurrer is general, and there is any fact to which the defendant ought to answer, the demurrer must be overruled, (2 *Swift's Dig.* 216. *Coop. Plead.* 112) contended, 1. That if the arbitrators are mistaken in a plain point of law, or of law and fact combined, it is a good ground for setting aside an award. *Ridout* v. *Pain*, 3 *Atk.* 494. *Kyd* 350. *Metcalf* v. *Ives*, 1 *Atk.* 64. *Corneforth* v. *Geer*, 2 *Vern.* 705. In this case, the arbitrators decided against a plain point of law, First, in admitting *Downer's* deed at all. Secondly, they decided without and against evidence, by considering *Downer's* deed, and that alone, sufficient evidence of title. Thirdly, they committed a similar mistake in awarding damages to *Noyes*, on the ground of a revocation, when it is expressly averred, as a reason why the submission was not followed, that one of the

*New-London,*
*July, 1829.*

Brown
*v.*
Green and
Noyes.

New-London, arbitrators refused to act. Fourthly, they clearly mistook the
July, 1829.
_____ law, in awarding upon the title to real estate. Here was an
Brown    excessive assumption of power. 1 *Swift's Dig*. 466. They
v.      also committed a plain mistake of law, in finding the title in
Green and
Noyes.   *Green* and *Noyes* jointly, whereas *Noyes* had no title except as
mortgagee.

2. That if *Green* and *Noyes* cannot sustain their actions at
law on the notes, on account of any legal defects in the award,
a court of chancery will grant an injunction to stay proceed-
ings in the suits. *Kyd* 329. (ed. 1808.)

*Law* and *Waite*, contra, were stopped by the Court.

BISSELL, J. It is apparent from an examination of the sub-
mission and the award, that the arbitrators did not mistake or
exceed their powers. Every thing awarded on by them, is
clearly within the terms of the submission. No corruption is
imputed to them ; nor is it alleged, that the award was procur-
ed, by the fraud or misbehaviour of the adverse party. The
*gravamen* of the plaintiff's complaint, is, that the arbitrators
found the facts, which form the basis of their award, upon in-
sufficient testimony. But it is, surely, too late to contend, that
an award is to be set aside, because the arbitrators have formed
a false estimate of the weight of evidence, or have drawn in-
correct conclusions from the facts before them. If this were
so, the controversy, in every case, might be opened, and the
merits of the award re-examined. This would be a departure
from well settled principles, and directly opposed to the uni-
form course of decisions on the subject. The only grounds on
which a court of chancery can interfere and set aside an
award, are partiality and corruption in the arbitrators, mistakes
on their own principles, or fraud and misbehaviour in the par-
ties. *Morgan* v. *Mather*, 2 *Ves.* jun. 15. *Tittenson* v. *Peat*,
3 *Atk.* 529. *Allen* v. *Ranney*, 1 *Conn. Rep.* 569. *Perkins &*
ux. v. *Wing* & al. 10 *Johns. Rep.* 143. It cannot be necessa-
ry to multiply authorities on a point so long and so well set-
tled. I am of opinion, that there is nothing erroneous in the
judgment of the superior court.

The other Judges were of the same opinion.

Judgment affirmed.