City of Bridgeport *v.* Eisenman.

———— ◆◆ ————

### CITY OF BRIDGEPORT *vs.* GEORGE EISENMAN AND WIFE.

A question with regard to the damage to be allowed *E* for land taken for a city street, was submitted by the city and *E* to two arbitrators, who, if they could not agree, were to appoint a third to act with them, the award of two to be binding. There was also at the same time a parol agreement between the parties that the arbitrators might proceed informally, according to their own sense of propriety, with or without witnesses, and with or without notice. The two arbitrators being unable to agree, appointed *G* as the third, and one of the two with *G* awarded the sum of $1,250 in favor of *E*. The city refusing to pay this sum *E* brought an action at law on the award and obtained judgment for the amount. Upon a bill in equity brought by the city for an injunction against the enforcement of the judgment and to set aside the award, on the ground of gross irregularity and unfairness in the proceedings, it was held—

1. That the judgment was not conclusive evidence that the arbitrators had conducted properly, but that parol evidence was admissible as to their misconduct.

2. That irregularities in their conduct, not of so serious a character as to show that they acted corruptly, were covered by the agreement of the parties as to the entire informality of the proceedings.

Various acts of the arbitrators considered, and held not sufficient to warrant the inference that they acted corruptly.

It was found by a committee in the court below, that while it was very difficult

to determine with exactness the amount of damage above incidental benefits done the respondents in taking their land for the street, yet that according to the evidence before the committee it did not exceed $600. The arbitrators had awarded $1,250. Held not sufficient ground for setting aside the award as made corruptly.

BILL IN EQUITY for an injunction and to set aside an award; brought to the Superior Court in Fairfield County. The facts were found by a committee and the case reserved for the advice of this court. The case is fully stated in the opinion.

*C. Thompson* and *G. Stoddard*, for the petitioners.

*S. B. Sumner* and *R. E. DeForest*, for the respondents.

GRANGER, J. This is a petition in chancery praying for an injunction against the respondents, restraining them from collecting a judgment obtained by them in an action of assumpsit founded upon an award of arbitrators, and that the award declared on in the action be set aside.

On the 1st of November, 1876, there existed between the petitioners on the one part, and the respondents on the other, certain matters of disagreement, which on that day were submitted to arbitration by the following writing:—"Whereas George Eisenman and Agatha Eisenman, his wife, of Bridgeport, are plaintiffs in an action of trespass against the city of Bridgeport, brought to the Superior Court in Fairfield County, and now pending in said court, demanding twelve hundred dollars damages and costs; and whereas the said city, through its common council and proper officers, has caused to be laid out a street called Railroad Avenue, over and through premises of said Eisenman and wife in said city, for which said Eisenman and wife claim damages against said city:—Now therefore the said city of Bridgeport and the said Eisenman and wife do hereby submit the whole question between them involved in said suit, and the question of benefits and damages accruing or resulting to said Eisenman and wife from the taking of such land for said street, to the arbitration of E. V. Hawes and Rudolph Kost of said city; and the said parties do covenant and agree to faithfully keep and abide by

the award which said arbitrators may make in writing in the premises, under their hands and ready for delivery on or before the first day of January, 1877. And it is further agreed by the parties hereto, that if the said Hawes and Kost shall be unable to agree upon an award, they may call in and associate with them a third person to act with them as arbitrator, and the decision of such three arbitrators or a majority of them shall be final and binding."

The submission was signed by the parties, and also a written agreement extending the time for making the award to April 1st, 1877. On the 6th of February, 1877, Hawes and Kost signed the writing following upon the submission:— "We, E. V. Hawes and Rudolph Kost, arbitrators under the above contract, hereby mutually agree to associate with ourselves Mr. Edward N. Goodwin as third arbitrator under the above extension of time to make an award as mutually agreed upon."

The award was made on the 8th of March, 1877, by Kost and Goodwin, and was left with the city attorney March 26th, 1877. The substance of the award was that the city of Bridgeport pay to the said George and Agatha Eisenman, on or before the 3d of April, 1877, the sum of $1,275 damages, over and above benefits resulting from the laying out of the street, and the sum of $349.50 damages in the action of trespass; upon the payment of which sums Eisenman and wife were to execute and deliver to the city a general release of all demands.

The city refused to pay the award, and the respondents in the present bill brought suit thereon to the Superior Court for Fairfield County, and the court, after full hearing, rendered judgment against the city and for the plaintiffs to recover the full amount of the award.

The city of Bridgeport in the present bill claims that the award should be set aside, and the respondents, Eisenman and his wife, be restrained from collecting the judgment, on the ground that the award is grossly unjust, and that the arbitrators Kost and Goodwin were guilty of improper conduct in hearing the matter submitted to them, and in making the

award. The petition was referred to a committee to find the facts, and upon the facts found the case is reserved for the advice of this court.

The first question presented is whether the evidence offered before the committee by the petitioners, tending to impeach the award, was admissible. The counsel for the respondents claimed that the judgment upon the award was conclusive evidence that the abitrators were duly chosen and appointed and had power and authority to make the award, and that they proceeded regularly, and that all the evidence offered to impeach the award by showing irregularity in the consultations and proceedings of the arbitrators was inadmissible. They also claimed that the evidence offered was variant from the allegations in the bill.

In reply to the claim of the conclusiveness of the judgment the petitioners offered evidence to show that at the trial of the action at law the city offered evidence to prove the several matters set forth in the petition, and that this evidence was rejected by the court. The counsel for the respondents conceded that such evidence was offered, but denied that it was rejected. The committee finds that the evidence was received subject to objection, and that the judge took time to consider the matter, and being of opinion that the evidence did not establish a defence to the action at law, he treated it as inadmissible for that purpose. The committee received the evidence.

We have no doubt as to the correctness of the ruling of the committee. If evidence of the character offered could not be received it is difficult to see under what circumstances an award of arbitrators could be impeached.

There can be no question about the rule as established in this state, that an award of arbitrators may be set aside by a court of equity, for extrinsic causes, such as misbehavior, fraud in the parties, and corruption, partiality or mistake in the arbitrators; and that an award, when the submission is by act of the parties, can be impeached at law only for matters apparent upon the face of it. An award of arbitrators stands upon the same footing as a judgment, and it decides the

rights of the parties as effectually as a judgment at law or a decree in chancery.

The award itself in this case could not be pleaded in bar to the petition to set it aside, nor could the judgment of the Superior Court based upon the award. And neither can operate to exclude parol evidence of the facts set up in a bill in equity brought to set it aside. And we do not discover any variance between the evidence received by the committee and the allegations of the bill.

The next question is, what judgment ought to be rendered upon the facts found. The principal ground of the petitioners' complaint is the connection of Mr. Goodwin with the matter and his conduct as arbitrator. It is claimed that he was improperly associated with the other arbitrators, principally through the misconduct of Kost, and that after his association with them he acted with gross unfairness, either alone or in conjunction with Kost. That portion of the report of the committee which relates to this part of the case is as follows:—

"The arbitrators having entered on the duties of their appointment, were unable to agree upon an award, and thereupon Mr. Kost proposed to Mr. Hawes for third arbitrator the name of Edward N. Goodwin, to which Mr. Hawes replied that he did not know him, but if the city attorney was satisfied he would agree to his appointment. Mr. Kost, after having seen the attorney on the subject, informed Mr. Hawes that the attorney had no objection to the appointment of Mr. Goodwin or of any other man, and that he said it was the arbitrators' business to appoint the third party, and no business of counsel. Mr. Kost intended to state truly and fairly the conversation which he had with the attorney. Taking the whole of that conversation together as it actually occurred, the substance of it was that the attorney declined to express any objection to Mr. Goodwin's appointment, because such objection was not within the province of counsel. Mr. Hawes understood Mr. Kost as saying that the attorney had in fact no objection to Mr. Goodwin's appointment, and that the attorney so said. Acting upon this under-

standing, and without making further inquiry, Mr. Hawes consented to the appointment of Mr. Goodwin, and united with Mr. Kost in a writing to that effect. The three arbitrators met, and held a consultation as such, and compared estimates and figures with each other. In the progress of this consultation it was ascertained that Mr. Goodwin's estimate of damages corresponded substantially with that of Mr. Kost, and largely exceeded the estimate of Mr. Hawes. Thereupon unpleasant words passed between Mr. Hawes and Mr. Goodwin, so much so that, in the end, Mr. Goodwin withdrew in anger, saying that he should have nothing more to do as arbitrator. As Mr. Goodwin was withdrawing Mr. Kost said to him that he would not consent to relieve him from his duties as arbitrator, but Mr. Goodwin then intended to sever all relations with Messrs. Kost and Hawes as arbitrators. It did not appear that during this meeting anything was said by Mr. Hawes on the subject of misunderstanding what took place between the city attorney and Mr. Kost, and it did not appear whether or not Mr. Hawes was then apprised of any such misunderstanding. Soon after, without consulting with Mr. Hawes on the subject, Messrs. Kost and Goodwin (the latter having been persuaded by Mr. Eisenman to act,) notified Mr. Hawes in writing that they would meet with him as a board of arbitration, naming a time and place for meeting. Mr. Hawes refused to attend, and did not act or acquiesce in the proceedings, and at the meeting of the two at the time and place specified, the mayor of the city, at the request of Mr. Hawes, gave notice that Mr. Hawes refused to act with Mr. Goodwin in the matter of the arbitration. After this notice was thus given the two, without the presence, concurrence or assent of Mr. Hawes, made and published their award. No notice was given to the city, or to any one acting for it, of the time and place of any of the meetings of the arbitrators, and the city did not know of the time and place of any such meetings, except that Mr. Hawes communicated to the mayor the notice before mentioned, which he received from Messrs. Kost and Goodwin. The arbitrators were not sworn, and did not take evidence concerning the matter submitted to them,

nor cause witnesses to come before them, or be heard in reference to the matter in dispute. Mr. Goodwin, at the suggestion of Mr. Hawes, advised freely with a friend as to the value of the premises in question. After Mr. Goodwin had been talked of as the third arbitrator and expected to act, but before his appointment as such by the written instrument of appointment, he went to the house of Mr. Eisenman and requested him to show him the land taken by the city. The request was complied with, a map of the premises was exhibited to Mr. Goodwin and explained, and the two talked freely upon the subject of the controversy, no one else being present or having notice. Upon evidence adduced by the respondents in reply, I find that it was agreed between the counsel of the respective parties, and so understood by the arbitrators, that the arbitrators might proceed to discharge their duties informally, according to their own sense of propriety, with or without witnesses, and with or without notice as they might prefer; and while the matter was in progress the city attorney knew that the arbitrators were thus proceeding and took no exception to it."

It seems to us upon a careful examination of these facts that they do not sustain the claim of the petitioners to the interference of a court of equity to set aside the award. It is a prominent feature of the case that the parties had agreed that the arbitrators in hearing and disposing of the case might "proceed informally, according to their own sense of propriety, with or without witnesses, and with or without notice as they might prefer," and that the city attorney knew that they were thus proceeding, and made no objection. Under this agreement the arbitrators had great latitude within which to exercise their discretion. They were limited by no rules of law or equity, by no precedents of form or practice, in hearing and deciding the case. Their only rule of procedure was their own sense of propriety. They were not obliged to call witnesses, and if they saw fit to call them were not bound to have them sworn. They were not required to hold any formal meetings for hearing the case, and if they held such meetings were not bound to give the parties notice of

the time and place, unless their own sense of propriety led them to do it.   They might view the premises and decide upon such view, might examine them by themselves or in the presence of both parties, or in that of either party alone. The agreement covered all irregularities and informalities, unless they were of so gross a character as to show that they were acting fraudulently and corruptly.

But the city claims that the manner in which Mr. Goodwin was selected as the third arbitrator was not covered by this agreement, and that he was so improperly selected, and so improperly acted after his selection, in connection with Mr. Kost, as to render the award void.   And in support of this claim the counsel for the city refer to the fact that Mr. Goodwin had a private interview with Eisenman, in which he was shown the land, and a map of the premises was exhibited to him and explained by Eisenman, and that they talked freely upon the subject of the controversy, no one else being present or having notice.   But the committee finds that this took place before Goodwin had been appointed arbitrator by the written instrument signed by the two others, but after he had been talked of as arbitrator.   But we think this was covered by the agreement, and would have been if Goodwin had already been appointed arbitrator.   It would be, in an ordinary case, an irregularity, though not necessarily involving any intention to be partial or unfair, but so long as it does not clearly show a purpose to be unfair, we can not regard it as lying beyond that range of action which was left to the arbitrators' "sense of propriety."

The city further claims that Kost acted improperly and unfairly in procuring Hawes's assent to the appointment of Goodwin, and that Hawes was deceived by him in relation to the statement of the city attorney made to him.   The report of the committee does not show that Kost designedly misled Hawes in anything that he said or did.   It is found that Kost intended to state truly and fairly the conversation which he had had with the city attorney, the whole substance of which conversation was that the attorney " declined to express any objection to Goodwin's appointment, because such objection

was not within the province of counsel." Hawes misconstrued what Kost honestly stated, and without making further inquiry consented to Goodwin's appointment, and united with Kost in making it in writing. Clearly there is nothing in all this that shows fraud, corruption, or any improper motive on the part of Kost or Goodwin, and Hawes's misconstruction of a statement honestly made ought not to prejudice the respondents.

The petitioners further contend that the amount awarded is so exorbitant and unreasonable that fraud and corruption on the part of Kost and Goodwin ought to be inferred.

But the finding of the committee does not sustain this claim. The only questions upon which the arbitrators acted were the value of the land taken and of the benefits resulting to Eisenman and wife from the laying out and construction of the avenue, questions upon which the judgments of the ablest and best men might widely differ. And upon this subject the committee finds that a large number of witnesses were heard, and that they concurred in estimating the value of the land taken at about $2,500; and that the arbitrators intended to give Eisenman and wife half the value of the land, and treat the other half as benefits. He also finds that there was a preponderance of evidence before him that the benefits were nearly equal to the value of the land. But he very properly adds that these benefits were somewhat speculative, were incapable of any measure approaching exactness, and were matters of opinion in which there might be honest differences of opinion; and he concludes by saying that the damages awarded, $1,275, were too large, but how much too large was a matter so without the means of accurate measurement that it was difficult to decide, but that according to evidence before him on which he relied he considered the damages over benefits as not exceeding six hundred dollars.

This, it will be observed, is mere matter of opinion and judgment upon the question of damages and benefits, and the opinion and judgment of one tribunal against another upon the same question of fact. Which is right, or nearest right, we are not called upon to say. But, taking the finding in its

broadest sense, it does not show that the sum awarded is so grossly in excess of the just amount which the respondents are entitled to receive from the city, as to warrant us in saying that the arbitrators acted corruptly, and that the sum they awarded was not in accordance with their honest judgment.

As to the $349.50 awarded in the action of trespass the committee makes no finding. The Superior Court is advised to dismiss the petitioners' bill.

In this opinion the other judges concurred.