## IN RE CURTIS AND CASTLE ARBITRATION.

Third Judicial District, New Haven, June Term, 1894. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

Under our practice a party who seeks to impeach an award rendered upon a submission under rule of court, for any cause, whether apparent upon the face of the award or otherwise, should do so by way of remonstrance against its acceptance by the court.

Where an award is within the submission, and there is no claim that the arbitrators failed to act on all matters submitted to them, or that they undertook to act on any matters not submitted, a court of equity will not set aside the award except for partiality and corruption in the arbitrators, mistake on their own principles, or fraud or misbehavior in the parties.

A submission provided that the arbitrators should proceed upon the principles of equity to the end that each party might receive all that was justly due him from the other. *Held* that this authority could not be regarded as a limitation upon the arbitrators, but rather as a liberal and highly creditable grant of power.

There is no rule of law that requires arbitrators to make a finding of facts in the case upon which they decide.

Arbitrators cannot be held to have acted improperly in a legal sense, merely because they omitted some detail in their award which neither the law nor the submission made it their duty to observe.

The parties had entered into a written contract which provided, among other things, that one of them should " work " a certain street, and the alleged breach of this agreement formed one of the claims submitted to the arbitrators. *Held* that parol evidence was admissible to show the special meaning of this term as understood by the parties at the time of making the contract; and that such evidence was not limited to expert testimony.

It is ordinarily within the province of arbitrators to determine whether certain damages claimed by one of the parties are proximate or remote.

In re Curtis—Castle Arbitration.

Where the submission to arbitration is made a rule of court under § 1203 of the General Statutes, the arbitrators do not thereby become officers of the court, but are the appointees of the parties as in cases where there is no rule of court.

The power to accept an award, given by statute to a court, implies the power to reject.

[Argued June 5th—decided July 9th, 1894.]

SUBMISSION to arbitration under a rule of court passed at the request of the parties by the Superior Court for Fairfield County. Lewis F. Curtis, one of the parties, remonstrated against the acceptance of the award of the arbitrators. To the allegations of the remonstrance, Samuel D. Castle demurred, and the court, *Shumway J.*, sustained the demurrer, accepted the award and rendered judgment accordingly, and the said Curtis appealed for alleged errors of the court in its rulings. *No error.*

Prior to the 5th day of April, 1893, the above named parties had claims each against the other, amounting on each side to more than five hundred dollars. On that day each of them prepared a schedule of his own claims, and they united in a submission of the same to arbitrators to which they prefixed the said schedules. The submission was in these words :—

" Now, therefore, we, the said Curtis and Castle, agree to submit said claims to arbitration under a rule to be made to that effect by the Superior Court for Fairfield County ; and we agree that the arbitrators shall be chosen as follows :—

" Each of us to choose one layman as arbitrator, and they two are to choose a third and presiding arbitrator, who shall be a lawyer, and the said Curtis hereby chooses Howard H. Scribner, of said Bridgeport, as his arbitrator under this agreement, and the said Castle hereby chooses Charles F. Granniss, of said Bridgeport, as his arbitrator under this agreement.

" It is further mutually agreed by and between the parties that the arbitrators under this agreement shall proceed upon the principle of equity, in hearing the matters in dispute and making their award, it being the desire of both parties that

the matters in dispute between them shall be equitably settled and adjusted so that each may have all that is equitably due to him from the other.

"It is further agreed that said arbitrators shall award to said Curtis or to the said Castle, as the case may be, such sum as they shall find to be due to him in excess of the sum owing from him, and that said sum shall be paid within thirty days from the date of said award, and that if it shall be decided that said Curtis is to pay said Castle any sum, then said arbitrators shall award that upon the payment to said Castle by said Curtis of said sum, said Castle shall thereupon deliver up to said Curtis the possession of said Main street property; and that if the award shall be that the said Castle is to pay said Curtis any money, then said arbitrators shall also award (that) said Castle shall furthermore deliver up to said Curtis possession of said Main street property within said thirty days.

"It is further mutually agreed that said arbitrators, or a majority of them, shall have power and authority to make and sign an award which shall be binding upon both parties hereto, and the costs shall be awarded in favor of the successful party."

This submission was signed, sealed, witnessed and sworn to by both the said parties.

The arbitrators so appointed in said submission selected and appointed George E. Hill, an attorney at law of Stamford, Connecticut, to be the third and presiding arbitrator, and signified such choice to the parties. Thereafter the matter was presented to the Superior Court in Fairfield County with proper affidavits, and on the 12th day of April, 1893, a rule and order was made by said court as follows :—

"Ordered, That said agreement be entered of record and that the said Lewis F. Curtis and Samuel D. Castle shall submit to and be finally concluded by such arbitration under the terms of said agreement, so signed and sworn to by them, and to such award as may be made by the arbitrators appointed in and by said agreement, upon such award being returned to and accepted by this court."

On the 16th day of November following, the said arbitrators published and returned into said court their award, viz :—

"In the matter of the arbitration between Lewis F. Curtis of New Milford, in Litchfield County, and Samuel D. Castle, of Bridgeport, Fairfield County, both in the State of Conn., the undersigned arbitrators appointed under an order of the Superior Court for Fairfield County, dated April 12th, 1893, having been duly sworn and having heard the evidence, hereby publish and declare the following award : The majority of said arbitrators award that said Curtis, upon the principles of equity, ought to and shall pay to the said Castle, in accordance with the submission of said ·Curtis and Castle, within thirty (30) days from the date hereof, the sum of five hundred and fifteen ($515) dollars and nine (9c) cents, together with the costs referred to in said submission, including the fees of the arbitrators, (which fees amount to the sum of six hundred and three ($603) dollars and thirty (30) cents,) unless said fees shall have been theretofore paid by said Curtis ; and that the said Castle shall upon the payment of said sums thereupon deliver up to said Curtis the possession of the property on Main street in Bridgeport, now occupied by him and belonging to said Curtis."

The award was signed by all three of the said arbitrators.

On the 6th day of December, 1893, the said Curtis filed in court an extended remonstrance against the acceptance of the said award. This remonstrance was subsequently amended until it set forth seventeen reasons of two or more paragraphs each, in which it was averred and claimed that the arbitrators had erred and acted improperly in a legal sense ; and prayed the court, (1) that the said award be not accepted, (2) that the matter be recommitted to the same or other arbitrators to be proceeded with, and for the making of another award ; and (3) that he be given such relief as to justice and equity doth appertain.

The first reason for the remonstrance was as follows :—

"1. At the times and places appointed by the arbitrators, the parties in support of and in opposition to the claims referred to in the agreement of arbitration, dated April 5th,

1893, and on file, without written pleadings other than the statement of claims contained in said agreement, presented their evidence by means of witnesses duly sworn, objected and took exceptions in numerous instances to the admission and rejection of certain evidence as in the ordinary trial of actions; and in their arguments, after the evidence was all in, claimed that certain facts had been proven or disproven, and that if so proven or disproven, the law was so and that the arbitrators should decide and report accordingly.

"2. Said Curtis, after said arbitrators had announced that they had made an award in favor of said Castle, viz: in July, 1893, requested said arbitrators to report to this court the facts found by them and upon which they based their conclusions that said Castle was entitled to a judgment and for such an amount as they might have found, in order that this court might know whether to render judgment for said Castle or not; but said arbitrators refused so to do.

"3. As a matter of fact, said arbitrators allowed said Curtis something on all his claims, except the sixth, amounting to $1,602.16 in all, and to said Castle nothing, except on his first and second claims, which they allowed to the amount of $2,117.25."

This reason of remonstrance was, by reference direct or secondary, made a part of each one of the succeeding reasons excepting the seventh and the tenth; and in substance contains the matters upon which the said Curtis claimed that the award should not be accepted. So far as the other reasons differ from this one they are noticed in the opinion.

There were sundry motions and rulings in the Superior Court which are now wholly unimportant. Afterwards said Castle filed a demurrer to the whole remonstrance, and alleged very many reasons for his demurrer. The court sustained the demurrer, overruled the remonstrance, accepted the award, and rendered judgment accordingly. From that judgment the said Curtis appealed to this court.

*Allan W. Paige* and *George P. Carroll*, for Lewis F. Curtis, appellant.

I. This was not a general submission to arbitration.    There was no provision that all controversies between the parties should be arbitrated upon.   And it was carefully provided by way of limitation that the arbitrators should be governed and controlled in their proceedings and decision by the principles of equity rather than of law.   *Prescott* v. *Fellows*, 41 N. H., 1;  *Greenough* v. *Rolfe*, 4 id., 357;  *Mussina* v. *Hertzog*, 5 Binney, 387;  *Estes* v. *Mansfield*, 6 Allen, 69;  6 Lawson's Rights   and   Remedies,   § 5342;   Morse   on   Arbitration, pp. 300–303;  Anderson's Law Dictionary, "Principle," *in verbum*.

II. The stipulation that the arbitrators should have power to make an award binding upon the parties, does not preclude a remonstrance to their award.   *Mussina* v. *Hertzog*, 5 Binney, 387;  *McCahan* v. *Reamer*, 33 Pa. St. 535;  *Buckwalter* v. *Russell*, 119 id., 493;  *Muldrow* v. *Norris*, 2 Cal. 74;  *United States* v. *Farragut*, 22 Wall. 406.

Even at common law arbitrators are not irresponsible tribunals.   Still less are they such under submissions to arbitrations, pursuant to General Statutes, §§ 1203, 1204.

III. It is a general principle in our jurisprudence that where power to accept a report of any kind is given to a court by statute, this carries with it power, for sufficient reasons, to review the report for the discovery of any errors of law.   *In re Application of Clinton Oyster Ground Committee*, 52 Conn., 5, 8;  *In re Application of Darien Oyster Ground Committee*, 52 id., 61;  General Statutes, §§ 2715, 2975, 184, 1034, 1036, 1037, 1044;  *Harris* v. *Town of Woodstock*, 27 Conn., 567;  *Pond* v. *Town of Milford*, 35 id., 32;  *Perry* v. *Platt*, 31 id., 433;  *Town of Suffield* v. *Town of East Granby*, 52 id., 175;  *State* v. *Worthington*, 1 Root, 137:  *Howard* v. *Lyon*, 1 id., 268;  *Spaulding* v. *Dunlap*, 1 id., 413;  *Smith* v. *Brush*, 11 Conn., 359, 368;  *Day* v. *Lockwood*, 24 id., 185;  *Spalding* v. *Day*, 37 id., 427.

IV. There was no ambiguity in the expression "to work a street," which justified the admission of parol evidence. Bishop on Contracts (enlarged ed.), § 377;  *Glendale Mfg. Co.* v. *Protection Ins. Co.*, 21 Conn., 19;  *Bennett* v. *Agricul-*

*tural Ins. Co.*, 51 id., 504 ; *Collender* v. *Dinsmore*, 55 N. Y., 200.

The simple question before the arbitrators was, what is meant by the expression " to work " said Palm street and Rose street. At best only expert evidence was admissible. Certainly all previous parol agreements had been merged in the written contract of September 24th, 1890. The conversation of the previous July could not be considered by the arbitrators. *Averill* v. *Sawyer*, 62 Conn., 560; *Benedict* v. *Gaylord*, 11 id., 333 ; *Elliot* v. *Weed*, 44 id., 19 ; *West Haven Water Co.* v. *Redfield*, 58 id., 39 ; *Beard* v. *Boylan*, 59 id., 181, 186 ; *Stanton* v. *N. Y. & Eastern R. R. Co.*, 59 id., 288 ; *Excelsior Needle Co.* v. *Smith*, 61 id., 56 ; *Bailey* v. *Hannibal & St. Joseph R. R. Co.*, 17 Wall., 96 ; *Maryland* v. *Baltimore & Ohio R. R. Co.*, 22 id., 105.

V. All arbitrators must hear the case and participate in the decisions and rulings. For the theory is, that the opinions and arguments of one arbitrator may influence the judgment of one or both of the others, and produce a different result. 6 Lawson's Rights and Remedies, § 3349 ; *Short* v. *Pratt*, 6 Mass., 497 ; *Doherty* v. *Doherty*, 148 id., 367 ; *State ex rel. Harty* v. *Kirk*, 46 Conn., 395.

*Alfred B. Beers*, for Samuel D. Castle, appellee.

I. A submission to arbitration under a rule of court is the same as common law arbitration, with the exception that by proceeding under the statute the successful party is entitled to have a judgment entered in his favor upon the acceptance of the award. Commissioners and committees are officers of the court and all their acts are within its power and control; but arbitrators appointed in the manner these arbitrators were appointed, are not officers of the court; they are the agents of the parties and stand upon the same ground as arbitrators appointed without a rule of the court. *Fisher* v. *Towner*, 14 Conn., 30, 31.

The court cannot take cognizance of the remonstrance and the appellant must seek his relief, if entitled to any, in a court of equity. *Brown* v. *Green*, 7 Conn., 536 ; *Eisenman*

v. *Bridgeport*, 47 id., 34–37 ; *Todd* v. *Barlow*, 2 Johns. Ch. (N. Y.), 551.

II. The first five classes of objections in the remonstrance are to the form of the award, in that the facts are not found, and also that certain evidence was presented to the arbitrators and certain facts proven which they did not find. We do not understand the law to be that arbitrators are to find the facts. Arbitrators are to make an award, not to find the facts upon which the award is made. Morse on Arbitration and Award, pp. 265, 266 ; *Shirley* v. *Shattuck*, 4 Cush.,470 ; *Strong* v. *Strong*, 9 id., 560 ; *Spofford* v. *Spofford*, 10 N. H., 254 ; *Boston Water Power Co.* v. *Gray*, 6 Met., 131–166. If arbitrators have acted in good faith neither party will be allowed to avoid the award by showing that they erred in judgment regarding the facts. *Hall* v. *Norwalk Fire Ins. Co.*, 57 Conn., 106.

III. The principal error claimed to have been committed by the arbitrators was in the admission of a conversation between the parties in relation to the working of streets described in the written contract of September 24th, 1893, as to how the streets were to be worked. This was proper : First, to show the surrounding circumstances when the contract was made. *Excelsior Needle Co.* v. *Smith*, 61 Conn., 57. Second, to show what sense the parties attached to the term or phrase as used in their contract. Brown on Parol Evidence, pp. 5, 9, 119, 120, 184–199.

IV. The provision in the submission that the arbitrators shall proceed upon the principles of equity in their hearing and award, is certainly not a limitation upon their powers. They are silent as to the rules of law they followed and the court has no power to inquire into that question. Morse on Arbitration and Award, p. 299 and note 2.

Courts will interfere in case of a mistake in the law only if it be apparent upon the submission or award that the arbitrators were bound or intended to decide according to law. Statements as to the course pursued by the arbitrators, or the evidence placed before them, cannot be received to show how the arbitrators proceeded, or what particular charges

were allowed.    Morse on Arbitration and Award, 298, and notes 3 and 4; Am. and Eng. Ency. of Law, Vol. 1, p. 707, note; *Jackson* v. *Bull*, 10 Johnson, Ch. (N. Y.), 147.    Therefore the statements in the remonstrances of what the arbitrators allowed or disallowed upon the respective claims of the parties cannot be considered.

V.    The remonstrant also claims that a majority of the arbitrators came to a decision and made rulings on the question of the admissibility of testimony without consulting with, or conferring with the other arbitrator.    This reason as stated, is insufficient: First, because it does not show that it was in his absence.    Second, because it does not show that he dissented from their ruling, and not dissenting, he is to be held as concurring with them.    *Somers* v. *Bridgeport*, 60 Conn., 529.    Third, because it appears that he concurred with them in their judgment by signing the award.    Fourth, because if such was the case it was the duty of the remonstrant, if he believed such action to be irregular, to withdraw from the proceedings, or take legal proceedings to prevent the award.    By continuing, he waived the irregularity, if one had been committed.    So far as the remonstrance discloses he did not even remonstrate.    Morse on Arbitration and Award, pp. 170–173 and note 1, 199; Am. and Eng. Ency. of Law, Vol. 1, p. 707; *Gates* v̂. *Treat*, 25 Conn., 71; *Rundell* v. *Lafluer*, 6 Allen, 480; *Farrell* v. *Eastern Countries R. R.*, 2 Exch., 244.    Instead of withdrawing, the remonstrant continued in the hearing, and only remonstrates after he finds that the award is not in his favor.

ANDREWS, C. J.    Section 1203 of the General Statutes provides that when any persons have submitted any controversy existing between them to the arbitrament of certain persons by them named, on their desiring such submission to be made a rule of court, the same may be entered of record, and a rule made that the parties shall submit to and be finally bound by such arbitration.    And it is further provided that " the award of the arbitrators being returned to and accepted by the court, judgment shall be rendered thereon for

the party in whose favor the award is made, to recover the sum awarded to be paid to him, with costs; and execution shall be granted," etc.

The acceptance of an award by the court to which it is returned, in order that it may become the basis of a judgment, undoubtedly requires an exercise of the judicial will of the court in its favor. To accept, means to receive with approval, to adopt, to agree to. Unless the award does receive such favorable action from the court, no judgment upon it can be rendered and no execution can issue. In cases where there is no objection such favorable action would be given almost as a matter of course. The duty imposed on a court in the acceptance of the award of arbitrators is closely similar to the duty in the acceptance of the report of a committee, or of an auditor, or of a referee. The same word is used by the statutes, and the duties imposed must be substantially the same. That arbitrators are not officers of the court as are committees, does not change the power or the duty of the court in this respect. The purpose of the acceptance in either case is the same—to establish the award in the one case and the report in the other, as the judgment of the court. In most of the cases where courts are authorized to accept the report of a committee, or other like board, the power is expressly given to reject it for cause —as in the case of a highway committee, § 2715. But the power to accept would seem to carry with it the power to refuse to accept. The former implies the latter. *In re Clinton Oyster Ground Committee,* 52 Conn., 8; *Stebbins* v. *Waterhouse,* 58 id., 370. "Where a submission is made by rule of court, it is competent for the party aggrieved by it, when it is returned to court, and before acceptance, to impeach it, not only for apparent defects, but extrinsic causes. In the case of defects apparent on the award, he can only question it before the acceptance; but if he should not object to it for extrinsic causes before acceptance, especially if he had no knowledge of their existence, he may, after acceptance, file his bill in equity to be relieved against it, on the same ground as where the submission is not by rule of court." 1

Swift's Dig., top p. 480. The rule so stated has been followed in this State for many years. *Parker* v. *Avery*, Kirby, 353; *Lewis* v. *Wildman*, 1 Day, 153; *Halsey* v. *Fanning*, 2 Root, 101; *Belton* v. *Halsey*, 1 id., 221; *Bray* v. *English*, 1 Conn., 498; *Fisher* v. *Towner*, 14 id., 26.

This rule requires that for defects apparent on the award the parties can obtain relief only before the acceptance, unless they are such as absolutely to deprive the court of jurisdiction. But for extrinsic causes it permitted a party to obtain relief after the acceptance. As, since the Practice Act, parties are enabled to obtain equitable and legal relief in the same action, there is no reason why a party who seeks to impeach an award for any cause, whether it be apparent on the award or not, should not do so by way of remonstrance to the acceptance. We think this is the better practice and the one which now ought to be followed.

Arbitration is an arrangement for taking and abiding by the judgment of selected persons in some disputed matter, instead of carrying it to the established tribunals of justice; and is intended to avoid the formalities, the delay, the expense and vexation of ordinary litigation. When the submission is made a rule of court, the arbitrators are not officers of the court, but are the appointees of the parties, as in cases where there is no rule of court. In either case the submission names the disputed matter upon which the arbitrators are to adjudge, and often prescribes the principles according to which they are to proceed, and the rules they are to follow in their decision. The submission in the present case does this in an ample manner. It provides that the arbitrators " shall proceed upon the principle of equity, in hearing the matters in dispute and making their award, it being the desire of both parties that the matters in dispute between them shall be equitably settled and adjusted so each may have all that is equitably due to him from the other." Counsel for the appellant, in their brief, speak of this designation of the authority given to the arbitrators as a limitation. We do not so read it. To us it seems rather a liberal and highly creditable grant of power. In hearing

the matter committed to them and in making their award, the arbitrators are commanded to act upon the principles of equity to the end that each of the parties may have from the other all that he is equitably entitled to. This is not equity in any narrow or limited meaning. It is equity in its broadest and most generous sense. It means good conscience, fair dealing, justice. It is in the spirit of the precept "to live honestly, to injure no man, and to render to every man his due." It is the golden rule, to do by others as we would that others should do by us. It is in the light of this direction to the arbitrators that we are to inquire whether their award should have been set aside for any of the reasons alleged in the remonstrance.

It is to be observed that in the remonstrance the appellant does not charge any willful or intentional misconduct to the arbitrators. Nothing in the nature of fraud, or corruption, or of partiality. He seems rather to have studiously avoided any such charge. He asks the court not to accept the award for the reasons stated "in respect to which said arbitrators erred and acted improperly in a legal sense." The reasons of remonstrance are not entirely harmonious. In some respects, indeed, they are inconsistent. And they do not admit of any very accurate classification. But in a general way they may all be brought into these three classes:—

*First :* That the arbitrators did not make—and refused to make—a finding of the facts on which they based their judgment. If within the term "finding of facts" is included a statement of the amounts found due on each of the several claims of the parties, then to this class may be referred the first, second, third, fourth, fifth, sixth, seventh, tenth and eleventh reasons of the remonstrance.

*Second :* That the arbitrators erred in admitting parol testimony to vary a writing. To this class may be referred the eighth, ninth, twelfth, thirteenth and fifteenth reasons.

*Third :* That the majority of the arbitrators did not consult with the minority in coming to their conclusion as to some parts of the award. Under this head fall the sixteenth

and seventeenth reasons. The fourteenth reason does not come into either of these classes.

There is no rule of law that requires arbitrators to make a finding of facts in the case on which they decide; nor does the submission in this case require them to do so. It seems to indicate the contrary. It directs the arbitrators to award to either party the amount that shall be found due to him in excess of the amount that shall be found owing from him; not the several sums due to, or owing from each on the separate claims. The court certainly ought not to hold that the arbitrators had acted improperly in a legal sense, and refuse to accept their award, if nothing more was charged against them than that they had omitted some detail which neither the law nor the submission had made it their duty to observe. The award must of course contain that actual decision of the arbitrators which is the result of their consideration of the various matters submitted to them. But it need contain nothing else. The means by which they have come to this conclusion, the reasoning or the principles on which they base it are, unless the submission otherwise requires, needless and superfluous. Morse on Arbitration and Award, 266.

The largest claim, measured by the amount of money, that existed between these parties, was the one made by Castle against Curtis for damages because, as Castle insisted, Curtis had not worked certain new streets, just laid out in Bridgeport, in the manner he had agreed to work them. There was a written contract between them. The controversy turned on the meaning to be given to the expression " to work a street," as used in that contract. Curtis claimed that it was a business or a trade term, and that the arbitrators should take judicial notice of its meaning; or, if they were not able to do so, that only expert testimony was admissible to inform them of its meaning. Castle, on the other hand, claimed that the expression was not a trade or business term, but was an expression used by them in the contract with a special meaning, perfectly understood by the parties, and agreed upon by them at the time the contract

was made; and offered parol testimony of what that special meaning was. To this Curtis objected, but the arbitrators admitted it.

We understand that there are cases in which parol testimony is admissible to show the contemporaneous understanding of the parties to a contract, of the meaning of the terms used by them in the contract. Thus in *Thorington* v. *Smith*, 8 Wallace, 1, it was held competent to show that the parties to a written contract by the word "dollars" intended Confederate dollars and not lawful dollars of the United States. This decision was applied and extended in " *The Confederate Note Case*," 19 Wall. 548. In *Excelsior Needle Co.* v. *Smith*, 61 Conn., 56–64, it is clearly implied that if the term "needle business" had been used in a special sense by the parties in their contract, such sense might have been shown by parol. In *Macdonald* v. *Longbottom*, 1 Ellis & Ellis, (102 E. C. L.), 978, the defendant by a written contract had purchased of the plaintiffs, who were farmers, a quantity of wool which was described in the contract simply as " your wool." Some time previously a conversation had taken place in which the plaintiffs stated that they had a quantity of wool consisting partly of their own clip and partly of wool they had contracted to buy of other farmers. In an action for not accepting the wool, this conversation was held admissible in evidence for the purpose of explaining what the parties meant by the term " your wool." In *Shore* v. *Wilson*, 9 Cl. & Fin., 566, the Chief Justice, Tindal, in giving the opinion says :—
" The true interpretation, however, of every instrument being manifestly that which will make the instrument speak the intention of the party at the time it was made, it has always been considered as an exception, or perhaps, to speak more precisely, not so much an exception from, as a corollary to, the general rule above stated, that where any doubt arises upon the true sense and meaning of the words themselves, or any difficulty as to their application under the surrounding circumstances, the sense and meaning of the language may be investigated and ascertained by evidence *dehors* the instrument itself; for both reason and common

sense agree that by no other means can the language of the instrument be made to speak the real mind of the party." See also *Hotchkiss* v. *Barnes*, 34 Conn., 27; *Avery* v. *Stewart*, 2 Conn., 69. Cases of this kind are analogous to latent ambiguities. But they are something more than such ambiguities. In these cases the parol testimony is used not only to explain the surrounding circumstances, but also to enable the court to look in upon the mind of the contracting parties and to read the written words of their contract in that very sense in which they wrote them.

In the sixteenth and seventeenth reasons of remonstrance it is alleged that a majority of the arbitrators did not consult with the minority in coming to some of the conclusions reached. If these reasons are compared with the eighth, the eleventh, the twelfth and the fifteenth reasons, to all of which reference is made in one or both of them, and with the award which is signed by all three of the arbitrators, it will appear not only that the majority did consult with the minority, but that the minority had a large share of success in shaping the award.

The fourteenth reason avers only that the arbitrators held certain damages claimed by Castle as not too remote. This was a matter clearly within their province to decide.

In considering all these reasons of remonstrance, we have not failed to be impressed with the fact that the real grounds of objection are several times repeated, with changed circumstances and with varying language, and that they are urged with a minute and technical insistence which differs widely from the confident and liberal tone used by the parties when they committed the controversy to their own chosen tribunal. If we have not given attention to all of them and in detail, it is because we think that so far as they are not answered by what we have said they fall clearly within the authority conferred by the submission on the arbitrators, and that the decision of the arbitrators is final.

None of the reasons of the remonstrance assert that the award is not within the submission. It is not pretended that the arbitrators failed to act on all the claims submitted to

them, or that they undertook to act on any matter not sub.
mitted. The uniform rule of decision has been in this State
that in such cases a court of equity will not set aside an
award except for partiality and corruption in the arbitra-
tors, mistakes on their own principles, or fraud or misbe-
havior in the parties. *Allen* v. *Ranney*, 1 Conn., 569; *Brown*
v. *Green*, 7 Conn., 536; *Fisher* v. *Towner*, 14 Conn., 30;
*Bridgeport* v. *Eisenman*, 47 Conn., 37.

" In general, arbitrators have full power to decide upon
questions of law and fact, which directly or incidentally
arise in considering and deciding the questions embraced in
the submission. As incident to the decision of the questions
of fact, they have power to decide all questions as to the ad-
mission and rejection of evidence, as well as the credit due
to evidence, and the inferences of fact to be drawn from it.
So, when not limited by the terms of the submission, they
have authority to decide questions of law, necessary to the
decision of the matter submitted; because they are judges
of the parties' own choosing. Their decision upon matters
of fact and law, thus acting within the scope of their au-
thority, is conclusive, upon the same principle that a final
judgment of a court of last resort is conclusive; which is,
that the party against whom it is rendered can no longer be
heard to question it. It is within the principle of *res judi-
cata;* it is the *final judgment* for that case, and between those
parties. It is amongst the rudiments of the law, that a party
cannot, when a judgment is relied on to support or to bar an
action, avoid the effect of it by proving, even if he could
prove to perfect demonstration, that there was a mistake of
the facts or of the law. * * * But when parties have, ex-
pressly or by reasonable implication, submitted the questions
of law, as well as the questions of fact, arising out of the
matter of controversy, the decision of the arbitrators on both
subjects is final. It is upon the principle of *res judicata*, on
the ground that the matter has been adjudged by a tribunal
which the parties have agreed to make final, and a tribunal of
last resort for that controversy; and therefore it would be as
contrary to principle, for a court of law or equity to re-judge

the same question, as for an inferior court to re-judge the decisions of a superior, or for one court to overrule the judgment of another, where the law has not given an appellate jurisdiction, or a revising power acting directly upon the judgment alleged to be erroneous." SHAW, Ch. J., in *Boston Water Power Co.* v. *Gray,* 6 Met., 165, 166.

There is no error in the judgment complained of.

In this opinion the other judges concurred.