RICHARD H. LIGGETT ET AL. vs. TORRINGTON BUILDING COMPANY.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued January 6th—decided February 23d, 1932.

*William M. Foord* and *William S. Locke,* for the appellants (plaintiffs).

*Charles P. Roraback,* with whom, on the brief, was *James W. Roraback,* for the appellee (defendant).

AVERY, J. Pursuant to a written contract, the Torrington Building Company (appellee) erected a stone dwelling-house for Richard H. and Lura M. A. Liggett, husband and wife, in Litchfield, and claimed from them the balance of the contract price certified by the architect as owing; while the owners claimed damages from the contractor for work improperly done under the contract. The parties, not being able to settle the controversy, agreed upon arbitration, pursuant to General Statutes, 1918, § 5993. A rule of court was entered October 18th, 1929, upon agreement of the parties, ordering them to submit to and be con-

cluded by such arbitration. It is to be noted that the arbitration was not had pursuant to the provisions of the Public Acts of 1929, Chapter 65, General Statutes (1930) §§ 5840-5855. February 11th, 1930, a majority of the arbitrators awarded the contractor a net amount of $5014.61; whereupon, the contractor moved the court to accept the award, and render judgment in its favor. The owners filed a remonstrance, to which the contractor demurred. Upon the sustaining of the demurrer, the owners were allowed to file an amended remonstrance, to which the contractor also demurred. The second demurrer was likewise sustained and, October 21st, 1931, the court rendered judgment for the contractor in accordance with the award, from which judgment the owners appealed.

The questions raised are whether or not the owners have alleged sufficient facts in their remonstrance and amended remonstrance to justify the court in setting aside the award of the arbitrators. In substance, the grounds of remonstrance advanced are: (1) that the majority of the arbitrators applied erroneous principles in arriving at their conclusion and mistook the law in construing the contract between the parties; (2) that they found certain facts without evidence; and (3) that they were influenced by bias or prejudice in favor of the contractor in rendering a decision in its favor.

From the award of the majority of the arbitrators, it appears that June 4th, 1926, the contractor entered into a contract with the owners for the construction of a new stone house in Litchfield according to plans prepared by an architect in New York City, at an agreed price of $106,680. The contract included a provision that when the architect found the work acceptable and the contract fully performed, he should promptly issue a final certificate, and the entire bal-

ance found to be due the contractor and noted in the certificate then became due and payable. Such a certificate was issued by the architect June 18th, 1928, and the sum found due was $4933. The arbitrators found that the agreement, the general conditions of the contract, the drawings and specifications,. including all modifications thereof, incorporated in the documents before their execution, formed the contract. Among the general conditions of the contract relating to the powers of the architect were the following: "The architect shall have authority to make minor changes in the work, not involving extra costs, and not inconsistent with the purpose of the building, but otherwise—no extra work or change shall be made unless in pursuance of a written order from the owner, signed or countersigned by the architect, or a written order from the architect, stating that the owner has authorized the extra work or change, and no claim for an addition to the contract shall be valid unless so ordered. . . . The architect shall have general supervision and direction of the work. He is the agent of the owner only to the extent provided in the contract documents, and when, in special instances, he is authorized by the owner so to act, in such instance he shall, upon request, show the contractor written authority. He has authority to stop the work whenever such stoppage may be necessary to insure the proper execution of the contract. . . . As the architect is, in the first instance, the interpreter of the conditions of the contract and the judge of its performance, he shall side neither with the owner nor with the contractor, and shall use his powers, under the contract, to enforce its faithful performance by both."

The specifications of the contract provide: "All window frames and French casements with masonry over the heads (except those under porches) shall be flashed

at the head with copper. The flashings shall be the full width of all openings, turned down over head, and tacked to inside of frame, and shall extend back over head of frame to inside of wall, and turned up two inches at the back."

The main item of dispute between the parties was on the question of a change from the original specifications in the method of flashing the windows. When the time came to put in these flashings, the contractor thought that they did not have sufficient support; and, after consultation with the architect's representative on the job, a revised detail was furnished by the representative of the architect. The revised detail shows the flashing, instead of under the lintel, carried over it and extending back only about half way through the wall, and not turned up at the back of the wall, as provided in the specifications. While the building was being constructed, the owner was not present, and did not authorize this change in detail, and was not aware of it until the job was completed. Because of the defective flashings, the house leaked around the windows and the owner claimed a deduction should be made by the contractor from the contract price on this account. The owner made claim against the contractor for the added expense of changing the flashings after the house was finally built; but the flashings, even as finally installed by the owner, were not the same as originally planned by the architect, and it does not appear whether or not they would have been tight if constructed according to the original specification. The architect himself was only occasionally on the job, and was represented throughout the construction of the building by his superintendent, who made the change in the flashings. No extra expense to the owner was involved, and no saving to the contractor.

The majority of the arbitrators concluded, taking into consideration the character of the building to be constructed and the terms of the contract, that the architect's superintendent had authority to order the change in the detail of the window flashings; that the change made was a minor change within the terms of the contract, which the architect had authority to approve; and that there was no substantial departure from the terms of the contract. The stipulation under which the arbitration was had provided: "WHEREAS, the said dwelling has been erected and the said architect has certified that all work required of the contractor has been done by it in accordance with the terms of the contract, and that certain sums of money are due to the contractor from the owners; and WHEREAS, the owners deny the correctness of such certification and have appealed therefrom to a board of arbitrators as provided in said contract, and made claim that all work required of the contractor under said contract has not been done, and that certain work done by it has not been done in accordance with the contract, and questions, claims and disputes have arisen; and WHEREAS, the owners and the contractors have agreed that all such claims and disputes shall be submitted to arbitration; . . . NOW, THEREFORE, it is stipulated and agreed between the parties as follows: 1. All questions in dispute and all claims arising out of said contract shall be submitted to the board of arbitrators above named for their decision in accordance with the terms of said contract and this stipulation, and the board shall have power to award such damages to the respective parties as the board shall deem to have been proven and established according to law."

In view of the stipulation, it is plain that the parties intended to submit to the arbitrators for decision

all questions of law and fact arising out of the contract, which necessarily involve the power of the arbitrators to construe and determine the true meaning and construction of the contract. *In re Curtis-Castle Arbitration,* 64 Conn. 501, 511, 30 Atl. 769; *White Star Mining Co.* v. *Hultberg,* 220 Ill. 578, 77 N. E. 327, 336, 337. Prior to the arbitration statute of 1929, it is well settled under our decisions that an award of arbitrators could be set aside only for partiality and corruption of the arbitrators, mistakes in their own principles, or fraud or misbehavior of the parties. *Allen* v. *Ranney,* 1 Conn. 569, 571; *Brown* v. *Green,* 7 Conn. 536, 542; *In re Curtis-Castle Arbitration,* 64 Conn. 501, 516, 30 Atl. 769; *Whitney Co.* v. *Church,* 91 Conn. 684, 691, 101 Atl. 329. The construction placed by the arbitrators upon the contract was not so palpably erroneous as to constitute such a mistake in their own principles as to justify setting aside the award. *Harris* v. *Social Mfg. Co.,* 8 R. I. 133, 139. Nor can it be said that the arbitrators went beyond their functions in reaching their conclusion in consideration of the amount of the contract, and the relation of the parties, and the nature of the work itself, and the custom of the trade, that the last word in connection with the erection of that particular house rested with the architect even though no evidence was offered as to the custom of the building trade on that point. "Arbitration is an arrangement for taking and abiding by the judgment of selected persons in some disputed matter, instead of carrying it to the established tribunals of justice; and is intended to avoid the formalities, the delay, the expense and vexation of ordinary litigation. When the submission is made a rule of court, the arbitrators are not officers of the court, but are the appointees of the parties, as in cases where there is no rule of court." *In re Curtis-Castle Arbitration,* 64 Conn. 501, 511,

30 Atl. 769. Arbitrators, being customarily chosen by the parties because of special knowledge or skill in connection with the matter to be decided, are not bound to follow strict rules of law, unless it be made a condition of the submission, but are expected to determine the questions presented to them in the light of their own special skill and knowledge. It is their right and duty, therefore, to take notice of a custom or usage in the trade of which they have knowledge, even though no direct evidence were offered upon that subject from the mouth of a witness. *Hall* v. *Norwalk Fire Ins. Co.*, 57 Conn. 105, 117, 17 Atl. 356.

The claim of the appellants that the arbitrators showed bias and corruption because they decided the case against the appellants requires no discussion.

There is no error.

In this opinion the other judges concurred.