WAUREGAN MILLS, INC. *v.* TEXTILE WORKERS UNION OF AMERICA, A.F.L.–C.I.O., ET AL.

SUPERIOR COURT    NEW LONDON COUNTY    FILE No. 25303

Memorandum filed August 25, 1958

*Robinson, Robinson & Cole,* of Hartford, for the plaintiff.

*Daniel Baker,* of Stamford, for the defendants.

HOUSE, J. The plaintiff, herein referred to as the company, and the named defendant, herein referred to as the union, for several years have joined in collective bargaining agreements covering, among other things, vacation pay for employees who met certain conditions of eligibility prescribed by the contract. The last of these agreements was effective for a term from August 15, 1957, to April 15, 1958. The agreement also provided for arbitration of disputes between the parties. The terms of this provision were very broad: "Any dispute, difference, disagreement or controversy of any nature or character having to do with hours, wages or other conditions of employment, which has not been satisfactorily adjusted . . . may be referred by either party to arbitration in accordance with the provisions hereinafter set forth."

As the plaintiff's business declined, employees, members of the union, were laid off for lack of work and were so advised. Manufacturing operations

were discontinued entirely early in 1958. By letter dated February 6, 1958, the company notified the union of the company's intention to terminate the contract as of its expiration date, April 15, 1958. Shortly after the February notice, the union raised the question of vacation pay for the 1958 season and, no agreement being reached, the union by letter dated April 6, 1958, referred the dispute to arbitration. The American Arbitration Association appointed an arbitrator, who scheduled a hearing.

The present proceedings arise through the company's action seeking a declaratory judgment determining whether the company is required by the collective bargaining agreement to submit the claim for vacation pay to arbitration and whether the company will be bound by any arbitration award which may be rendered without the company's having "consented to or participated in said arbitration proceedings." The company seeks a temporary injunction staying the arbitration proceedings pending a determination of the issues raised by the action for a declaratory judgment. The specific immediate issue is whether such a temporary injunction should issue.

In contesting the company's petition, the union seeks an order staying the declaratory judgment action until an arbitration has been had in compliance with the collective bargaining agreement for arbitration and also an order attaching the property of the company pending the rendering and confirmation of an arbitration award. In its brief, the union, recognizing the possible bankruptcy implications of an attachment, "is not insistent upon this form of security to the exclusion of all others" and suggests alternative relief in the form of a bond or trusteeship of sufficient assets to satisfy any arbitration award.

It must be concluded that the plaintiff company has not established the existence of such a situation as would justify the use of the court's injunctive powers. "No court of equity should ever grant an injunction merely because of the fears or apprehensions of the party applying for it. Those fears or apprehensions may exist without any substantial reason. Indeed they may be absolutely groundless. Restraining the action of an individual or a corporation by injunction is an extraordinary power, always to be exercised with caution, never without the most satisfactory reasons. Not the applicant only, but the court, must be satisfied that a wrong is about to be done, or an injury is about to be sustained, which, practically, will be irreparable, before resort should be had to this extreme power." *Goodwin* v. *New York, N.H. & H.R. Co.*, 43 Conn. 494, 500; *Brainard* v. *West Hartford,* 140 Conn. 631, 634. In the circumstances of the present case, there has been no showing that the plaintiff will be irreparably harmed in the event that the temporary injunction is denied. Furthermore it appears that the plaintiff does have an adequate remedy at law in the statutory provisions for judicial review of arbitration proceedings. General Statutes § 8152.

As a matter of policy, arbitration agreements are favored, particularly in the field of labor-management disputes. "Arbitration is an arrangement for taking and abiding by the judgment of selected persons in some disputed matter, instead of carrying it to the established tribunals of justice; and it is intended to avoid the formalities, the delay, the expense and vexation of ordinary litigation." *In re Curtis-Castle Arbitration,* 64 Conn. 501, 511; *Liggett* v. *Torrington Building Co.,* 114 Conn. 425, 431. "Tranquility in the field of labor relations is promoted by prompt and equitable settlement of labor disputes and arbitration should be encouraged as a

desirable process toward that end. 'To work well it must operate with a minimum of delay and with all the flexibility which equity can give it.' *Matter of Feuer Transportation Co.*, 295 N.Y. 87, 91 . . . ." *Colt's Industrial Union* v. *Colt's Mfg. Co.*, 137 Conn. 305, 309; *Local 63, Textile Workers Union* v. *Cheney Bros.*, 141 Conn. 606.

In the present circumstances, the validity of the agreement to arbitrate is not attacked, as was the situation in *International Brotherhood of Teamsters*, v. *Shapiro*, 138 Conn. 57; nor is the attack on the agreement itself, as in *Gaer Bros., Inc.* v. *Mott*, 144 Conn. 303, where the attack was on the agreement because the arbitrator therein named was biased and prejudiced.

Agreements to arbitrate are "valid, irrevocable and enforceable, except when there shall exist sufficient cause at law or in equity for the avoidance of written contracts generally." General Statutes § 8151. Nor can there be any question that the clause in the contract providing for arbitration survives the termination of the contract. *Batter Building Materials Co.* v. *Kirschner*, 142 Conn. 1, 10.

As already noted, the parties chose to agree upon almost unlimited reference of disputes to arbitration. This was their own choice. Article 7 of the agreement provides for arbitration of "any dispute, difference, disagreement or controversy of any nature or character having to do with hours, wages, or other conditions of employment." The parties having chosen their own tribunal, this court would interfere only upon the clearest showing of invalidity, fraud or inequity. Most particularly is this so upon an application for a temporary injunction.

The court is not unmindful of the many authorities cited by both counsel relative to the powers of

arbitrators in general and particularly in cases involving disputes concerning vacation pay. There is much law on the subject. In the view of this court, however, these authorities are more properly for the consideration of the arbitration tribunal to whom the parties have agreed to submit their differences. The agreement of submission is unrestricted, and the arbitrator is therefore empowered to determine the relevant questions of law and fact. *Colt's Industrial Union* v. *Colt's Mfg. Co.*, 137 Conn. 305, 309; *United Electrical Radio & Machine Workers* v. *Union Mfg. Co.*, 145 Conn. 285, 288; *Liggett* v. *Torrington Building Co.*, 114 Conn. 425; *Pratt, Read & Co.* v. *United Furniture Workers,* 136 Conn. 205.

It must be concluded that the plaintiff has failed to establish that it is entitled to the extraordinary remedy which it now seeks, and the petition for a temporary injunction is denied.

The facts of the case bring it squarely within the provisions of § 8152 of the General Statutes, which provides that if any action for legal or equitable relief be brought by any party to a written arbitration agreement, the court, upon being satisfied that any issue involved in such action is referable to arbitration under the agreement, shall, on motion of any party to the arbitration agreement, stay the action or proceeding until an arbitration has been had in compliance with the agreement. This provision is entirely in accord with the policy of the state, as hereinbefore noted, to encourage arbitration as a speedy, informal procedure for the adjustment of disputes. To adopt a procedure whereby the very questions to be determined in an arbitration proceeding are first determined in the courts would run directly counter to this policy. Ample protection is afforded to the parties by the provisions of chapter 398 of the General Statutes, providing for confirming, vacating and correcting arbitration awards.

Upon the defendant's application, an order may enter under the provisions of § 8152 of the General Statutes staying the plaintiff's action for a declaratory judgment until arbitration has been had in compliance with the agreement of the parties.

While the plaintiff company has discontinued manufacturing operations, its assets are still substantial, and it does not presently appear that it would be unable to comply with any award that might be rendered against it in the event that the defendant should prevail in the arbitration proceedings. Both parties have noted the possible complications which might arise in the event that an attachment is ordered. It suffices for the present to note that the defendant has not satisfied the court that such an order as it seeks by way of attachment, segregation of assets, or trusteeship is justified. That application is denied without prejudice to a renewal of the application should changing circumstances appear to justify the intervention of this court.