No. 62,002

CITY OF LENEXA, KANSAS, *Appellee*, v. C. L. FAIRLEY CONSTRUCTION COMPANY, INC., *Appellant*.

(777 P.2d 851)

Opinion filed July 17, 1989.

*Stephen J. Dennis*, of Niewald, Waldeck, Norris & Brown, of Overland Park, argued the cause and was on the briefs for appellant.

*R. Scott Beeler*, of Gage & Tucker, of Overland Park, argued the cause and *Albert F. Kuhl*, of the same firm, was with him on the briefs for appellee.

The opinion of the court was delivered by

LOCKETT, J.: C. L. Fairley Construction Company, Inc., (Fairley) appealed from an order of the Johnson County District Court denying its motion to confirm an arbitration award against the City of Lenexa and from that court's order denying its motion to alter or amend judgment. In an unpublished opinion, the Court of Appeals reversed, finding that the arbitration agreement was enforceable and irrevocable. This court granted Lenexa's petition for review.

On June 19, 1984, Fairley and Lenexa entered into a construction contract which contained these provisions:

[The Role of the City Engineer in Settling Disputes]
"Decisions on Disagreements:

"9.9 ENGINEER will be the interpreter of the requirements of the Contract Documents and the judge of the performance thereunder. In his capacity as interpreter and judge he will exercise his best efforts to insure faithful performance by both OWNER and CONTRACTOR. He will not show partiality to either and will not be liable for the result of any interpretation or decision rendered in good faith. Claims, disputes and other matters relating to the execution and progress of the Work or the interpretation of or performance under the Contract Documents shall be referred to ENGINEER for decision; which he will render in writing within a reasonable time.

[The Arbitration Provision]

"9.10 Either OWNER or CONTRACTOR may demand arbitration with respect to any such claim, dispute or other matter that has been referred to ENGINEER, except any which have been waived by the making or acceptance of final payment as provided in paragraph 14.16, such arbitration to be in accordance with Article 16. However, no demand for arbitration of any such claim, dispute or other matter shall be made until the earlier of (a) the date on which ENGINEER has rendered his decision or (b) the tenth day after the parties have presented their evidence to ENGINEER if he has not rendered his written decision before that date. No demand for arbitration shall be made later than thirty days after the date on which ENGINEER rendered his written decision in respect of the claim, dispute or other matter as to which arbitration is sought; and the failure to demand arbitration within said thirty days' period shall result in ENGINEER'S decision being final and binding upon OWNER and CONTRACTOR. If ENGINEER renders a decision after arbitration proceedings have been initiated, such decision may be entered as evidence but shall not supersede the arbitration proceedings, except where the decision is acceptable to the parties concerned.

. . . .

[The Remedy Provision]

"16.5 The duties and obligations imposed by these General Conditions and the rights and remedies available hereunder, and, in particular but without limitation, the warranties, guarantees and obligations imposed upon CONTRACTOR by paragraphs 6.30, 13.1, 13.10 and 14.3 and the rights and remedies available to OWNER and ENGINEER thereunder, shall be in addition to, and shall not be construed in any way as a limitation of, any rights and remedies available to them which are otherwise imposed or available to them which are otherwise imposed or available by law, by special guarantee or by other provisions of the Contract Documents."

After a dispute arose over delays which allegedly impeded Fairley's ability to complete the project, Fairley filed a demand for arbitration. On the morning of the second day of the scheduled hearing, pursuant to K.S.A. 5-402, Lenexa filed a petition to stay the arbitration proceedings. The district court denied Lenexa's petition.

Subsequently, the arbitrator provided by the American Arbi-

tration Association entered a written arbitration award in favor of Fairley for $21,434.53 and assessed the administrative expenses of the American Arbitration Association and the fees of the arbitrator against Lenexa. The Association subsequently directed Lenexa to pay Fairley an additional $1,050 for arbitration fees which Fairley had previously advanced. K.S.A. 5-410.

After the award was entered, Fairley filed a motion to confirm the award in the district court. K.S.A. 5-411. Thereafter, Lenexa filed a motion to vacate the award. K.S.A. 5-412. After a hearing, the district court denied Fairley's motion to confirm the award, thereby rendering moot Lenexa's motion to vacate. After the district court found that the arbitration provision in the contract was ambiguous with respect to whether the parties intended for arbitration to be binding, it admitted extrinsic evidence to determine this issue. The district court determined the parties had specifically deleted a provision in the contract making an arbitrator's award binding.

After the district court denied Fairley's motion to alter or amend judgment, Fairley appealed and the Court of Appeals reversed, holding that the arbitration provision "is straightforward and clearly compels arbitration" and that the district court's admission of extrinsic evidence on the issue was erroneous. Significant to the court's holding was its determination that K.S.A. 5-401 which provides that written agreements to arbitrate are "valid, enforceable and irrevocable," makes no distinction between binding and nonbinding arbitration.

Lenexa claims that the Court of Appeals erred by determining that the contract was not ambiguous and, more importantly, by its interpretation of the Kansas Uniform Arbitration Act, K.S.A. 5-401 *et seq.* Lenexa asserts that the Court of Appeals' interpretation of the Act "create[s] an improper presumption against the right of parties to contract freely for nonbinding arbitration in Kansas."

Lenexa alleges that the contract was ambiguous as to the effect of arbitration and that the district court properly admitted extrinsic evidence to determine the parties' intent. In essence, Lenexa argues that the contract provides for advisory arbitration, *i.e.*, the parties never agreed to be bound by an arbitrator's decision.

Lenexa points to two provisions in the contract which it claims

are ambiguous as to whether the parties intended to be bound by an arbitrator's decision. The first provision is paragraph 16.5, which provides in part: "[T]he rights and remedies available to [the parties] shall be in addition to, and shall not be construed in any way as a limitation of, any rights and remedies available to them which are otherwise imposed or available by law, by special guarantee or by other provisions of the Contract Documents."

The Court of Appeals rejected this contention, finding that this "wording, read in harmony with the plain, unambiguous requirement for arbitration, preserves to the parties 'any rights and remedies available to them which are otherwise imposed or available by law' which, when it refers to 'other provisions of the contract documents,' strengthens the obligation of the parties to arbitrate." We agree.

The second provision which Lenexa claims to be ambiguous is in the arbitration clause itself: "[T]he failure to demand arbitration within said thirty days' period shall result in ENGINEER'S decision being final and binding upon [the parties]." Basically, Lenexa relies upon the rule of *expressio unius est exclusio alterius* (the expression of one excludes the other) in arguing that the use of the words "final and binding" with regard to the engineer's decision and not with regard to an arbitrator's decision creates an ambiguity on this point. We disagree.

Generally, courts seek to uphold arbitration agreements even where the contract provisions are somewhat uncertain and indefinite. Arbitration agreements are construed "by the usual rules and canons of contract interpretation." *Village of Cairo v. Bodine Contracting Co.*, 685 S.W.2d 253, 258 (Mo. App. 1985). Regardless of the construction of a written instrument made by the trial court, on appeal the instrument may be construed and its legal effect determined by the appellate court. *Cornwell v. Jespersen*, 238 Kan. 110, 116, 708 P.2d 515 (1985).

Fairley's argument mirrors the Court of Appeals' decision: (1) the contract contained an arbitration clause; (2) the Kansas Uniform Arbitration Act makes no distinction between binding and nonbinding arbitration; and (3) K.S.A. 5-401, which provides that written agreements to arbitrate are "valid, enforceable and irrevocable," compels the enforcement of the arbitration award in this case.

Black's Law Dictionary 96 (5th ed. 1979) defines arbitration as:

"The reference of a dispute to an impartial (third) person chosen by the parties to the dispute who agree in advance *to abide by the arbitrator's award* issued after a hearing at which both parties have an opportunity to be heard." (Emphasis added).

In *Miller v. Brumbaugh,* 7 Kan. 343, 350-53 (1871), we discussed arbitration, stating:

"The settlement of disputes by arbitration is a matter of ancient practice at the common law. It did not originate with the statute of William III, but existed long anterior. That statute increased its efficacy, and enlarged its use, by providing a method of transforming the award of the arbitrators into the judgment of a court. A similar statute may be found in many States. But the right to arbitrate exists independent of those statutes. In 15 Wend., 100, Senator Edwards says: 'The revised statutes have not changed the law in relation to submitting matters in controversy to arbitration, except in cases where the parties enter into a submission in pursuance of the provisions they contain. They do not declare all other submissions void; nor do they affect a parol submission; such a submission is as valid as it ever was.' And Senator Maison: 'Parties may by parol submit any matters in.controversy between them to arbitration; this is the common law of the land.' In a note in 2 Hill, p. 273, the editor says: 'Statutes like the one in this state, (New York,) prescribing a certain form for submission to arbitration, and for enforcing awards made thereon, by special proceedings in court, have seldom been construed as excluding parties from the right of submitting in the common law mode. (See *Lagdson v. Roberts' Ex'rs,* 3 Monroe, 256; *Evans v. McKinney,* Litt. Select Cas., 264; *Wells v. Lain,* 15 Wend., 99; *Richardson v. Cassily,* 3 Watts, 320.) Indeed, even where the statute had been pursued in respect to the form of submission, it has been held that the party in whose favor it was made might elect either to enforce it under the statute or treat it as a common-law award, and enforce it by action. *Dickerson v. Tiner,* 4 Black. 253; *Titus v. Scantling, id.,* 89. See also, *Lamar, et ux, v. Nicholson,* 7 Porter, (Ind.,) 158.' And Denio, J., giving the opinion of the court, in 21 N.Y., 148, uses this language: 'It has been often held that the statute prescribing certain forms for submission to arbitrators, and allowing the parties to agree that a judgment of a court of record designated in the instrument of submission should be rendered upon the award, was cumulative merely, not exclusive; and that an award pursuant to a submission which would have been valid at common law, but which did not conform to the statute, would support an action.' This arbitration, which, from the above quotations, and numberless other authorities which might be cited, is shown to exist independent of any statutory provisions, and as a right guaranteed by the common law, is thus defined by Blackstone, Book iii. p. 16: 'Arbitration is where the parties, injuring and injured, submit all matters in dispute concerning any personal chattels or personal wrong to the judgment of two or more arbitrators who are to decide the controversy, and if they do not agree, it is usual to add that another person be called in as umpire, to whose sole judgment it is then referred; or frequently there is only one arbitrator originally appointed. This decision in any of these cases is called an award; and thereby the question is as fully determined, and the right transferred or settled, as it could have been by the agreement of the

parties or the judgment of a court of justice.' Bacon in his Abridgement, on page 306, says: 'The submission is the authority given by the parties in controversy to the arbitrators to determine and end their grievances; and this being a contract or agreement must not be taken strictly, but largely, and according to the intent of the parties submitting.' And further on a few lines occur these words: 'The submission may be by word or deed. If the submission be by words, there is no remedy to enforce the party to perform the award; but reciprocal actions on the case, and an action of debt will lie, if money be awarded, for it is in nature of a simple contract.' The note on page 35 of Caldwell on Arbitration reads thus: 'A submission is a contract by which contending parties agree to submit the matters in controversy between them to the decision of a third person or persons, and to be bound by such decision.' And in the text, on the same page, are these words: 'The submission may be simply the act of the parties, or may be entered into through the medium of a court of law or equity. In the former case the submission may be verbal, by written agreement, not under seal; by indenture, with mutual covenants to abide by the decision of the arbitrators; by deed poll, or by bond, each party executing an obligation to the other, conditioned to be void respectively, on performance of the award.'

"Arbitration proceedings may be properly classified under three heads: *First,* Where, in the absence or regardless of any statutory provisions, the parties to any controversy submit the decision thereof to mutually chosen arbitrators. In these cases, while the questions in dispute are settled, neither the arbitrators nor the party in whose favor the award is made have power to enforce it. The successful party must resort to the courts in an action on the award, and is benefited by the arbitration only in this, that he may base his action on the award, instead of the original cause of action, and such award is, unless impeached, conclusive evidence in his favor. *Second,* Where by statute authority is given to parties to a controversy not in court to submit the same to arbitrators, whose award may on motion be entered as the judgment of a designated court. Here the successful party has not only the advantage of a determination of the disputed questions, but an easy and expeditious method of placing that determination in a position where the law will enforce it. This was the aim and scope of the statute of William III, above referred to. *Third,* When a court in which a controversy is pending, sends such controversy for determination to arbitrators chosen by the parties or selected by the court. This method of arbitration which is usually designated as a reference is very common in this country. Of these three methods or kinds of arbitration, the second does not exist in Kansas, the first and third do. The parties to this suit proceeded under the first method. They arbitrated their differences, accepted the award, and gave and received a note in settlement. Such award is conclusive until impeached."

In *Guild v. Railroad Co.,* 57 Kan. 70, 78, 45 Pac. 82 (1896), we defined arbitration as a submission to the decision of one or more persons of a matter in controversy or dispute between the parties. The power of the arbitrator to render a valid award rests on the continuing consent of the parties. We also recognized the common-law rule that either party may revoke the arbitration agreement at any time prior to the making of an award, even

where the parties have entered into an express agreement not to revoke.

Arbitration proceedings were provided for by statute after May 1, 1876. See L. 1876, ch. 102. In *Clark v. Allaman*, 71 Kan. 206, 80 Pac. 571 (1905), Justice Burch traced the history of the applicability of the common law within the territory which is now Kansas from the time of its acquisition by the United States up to the time of the opinion. He concluded that the common law was prevalent throughout the area under every form of governmental organization until the autumn of 1868, when the general statutory law of this state replaced the common law. See G.S. 1868, ch. 119, § 3. In *Board of Neosho County Comm'rs v. Central Air Conditioning, Inc.*, 235 Kan. 977, 683 P.2d 1282 (1984), we reasserted that, when a statute conflicts with the common law, the statute controls. We also determined that the common-law principles of arbitration had been modified by the legislature when Kansas adopted the Uniform Arbitration Act in 1973. See K.S.A. 5-401 *et seq.*; see generally Comment, *Arbitration: Confirming Application of the Kansas Uniform Arbitration Act*, 24 Washburn L.J. 615, 622-24 (1985).

On the date the present contract was made, the Kansas Uniform Arbitration Act provided:

"**Validity of Arbitration Agreement.** . . . [A] provision in a written contract . . . to submit to arbitration any controversy . . . thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." K.S.A. 5-401.

In *Wauregan Mills, Inc. v. Textile Workers Union*, 21 Conn. Supp. 134, 137, 146 A.2d 592 (Super. Ct. 1958), the Connecticut court defined an arbitration agreement as " 'an arrangement for taking *and abiding by* the judgment of selected persons in some disputed matter, instead of carrying it to established tribunals of justice, and it is intended to avoid the formalities, the delay, the expense and vexation of ordinary litigation.' " (Emphasis added.)

K.S.A. 5-420 requires that the Act be construed as to effectuate its general purpose to make uniform the laws of those states which have enacted it. It is widely held in those states which have adopted the Uniform Arbitration Act that its purpose is to "enforce arbitration agreements as a matter of the cogent public policy in favor of resolution of disputes without resort to the

courts." *Village of Cairo v. Bodine Contracting Co.,* 685 S.W.2d at 258.

In addition, legal scholars have also recognized the binding nature of arbitration. "The fact that an arbitration decision is reached in a short term *and is final* is a substantive and real advantage in the arbitration process." Kanner, *The Dynamics of the Arbitration Process,* 39 Arb. J., June 1984 at 57, 60 (emphasis added); see Lucas, *The Future of Arbitration,* 42 Arb. J., June 1987 at 55; McDonald & Bivins, *Alternative Dispute Resolution and the Courts,* 42 Arb. J., June 1987 at 58.

Since the enactment of the Kansas Uniform Arbitration Act in 1973, no appellate court in this state has used the term "non-binding arbitration" in an opinion. This term, however, infrequently appears in cases from other jurisdictions. In one such case, the Colorado Court of Appeals held that a collective bargaining agreement, which provided for "advisory" umpire reports, "effectively operated as a nonbinding arbitration agreement." *Hoffsetz v. Jefferson Cty School D. R-1,* 757 P.2d 155, 157 (Colo. App. 1988). But this decision is not contrary to our Act. The Kansas Legislature has asserted that it is against public policy for contracts of insurance, contracts between an employer and employees, and provisions of a contract providing for arbitration of a claim in tort to be subject to arbitration under the Act.

The term "binding arbitration" is redundant. Arbitration is, by definition, binding. Mediation and conciliation are the recognized legal terms of art for what is commonly referred to as "nonbinding arbitration." See Black's Law Dictionary 262, 885 (5th ed. 1979). Domke on Commercial Arbitration § 4:17 (Prac. Guide 1987) explains: "Mediation . . . clauses are not to be treated as arbitration clauses. From a procedural standpoint, arbitration is binding whereas mediation . . . [is] not. Parties signing mediation . . . clauses may not wish to expose themselves to the inherent finality of an arbitral proceeding."

The difference between arbitration and mediation may also be seen by comparing the use of "valid, enforceable and irrevocable" in K.S.A. 5-401 with the language used in K.S.A. 44-817, a statute which defines the role of mediators in labor relations disputes: "It shall be the function of such mediator to bring the parties together voluntarily under such favorable auspices as will tend to effectuate settlement of the dispute, but . . . the medi-

ator . . . [shall not] have any power of compulsion in mediation proceedings." This disparity in language clearly indicates our legislature's intent to distinguish between arbitration and mediation.

Here, the contract does not call for "advisory" or "nonbinding" arbitration, or more accurately, for mediation. It provides that either Lenexa or Fairley "may demand arbitration." Given the legal meaning of the word "arbitration," and the fact that K.S.A. 5-401 does not distinguish between binding and nonbinding arbitration, the Court of Appeals was correct in finding that the "plain meaning of all of the terms of the agreement compels a holding that the parties bound themselves upon demand of either to arbitrate their disputes."

The judgment of the Court of Appeals reversing the district court is affirmed. The judgment of the district court is reversed and the case is remanded.