No. 116,764

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DAVID L. WASINGER, d/b/a
ALLEGIANT CONSTRUCTION & DESIGN,
and DAVID L. WASINGER, Personally,
*Appellants*,

v.

ROMAN CATHOLIC DIOCESE OF SALINA IN KANSAS;
ST. MARY QUEEN OF ANGELS PARISH;
ST. MARY QUEEN OF ANGELS PARISH COUNCIL;
and MICHAEL ELANJIMATTATHIL, Individually,
*Appellees*.

SYLLABUS BY THE COURT

1.

Mediation is a term of art defined by K.S.A. 5-502(f) as "the intervention into a dispute by a third party who has no decision making authority, is impartial to the issues being discussed, assists the parties in defining the issues in dispute, facilitates communication between the parties and assists the parties in reaching resolution."

2.

Arbitration is a term of art defined by K.S.A. 5-502(g) as "a proceeding in which a neutral person or panel hears a formal case presentation and makes an award, which can be binding or nonbinding upon the parties relative to a prior agreement."

3.

The concept of binding mediation is inconsistent with the definition for mediation under the Kansas Dispute Resolution Act, K.S.A. 5-501 et seq.

1

4.

When a contract calls for mediation, the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (2012), and the Kansas Arbitration Act, K.S.A. 5-401 et seq., do not apply.

5.

Failure on the part of the appellee to cross-appeal an issue decided by the district court cannot be raised before this court.

6.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Appeal from Russell District Court; MIKE KEELEY, judge. Opinion filed November 17, 2017. Reversed and remanded.

*John T. Bird* and *Todd D. Powell*, of Glassman, Bird, Brown & Powell, LLP, of Hays, for appellants.

*Norman R. Kelly*, of Norton, Wasserman, Jones & Kelly, L.L.C., of Salina, for appellees.

Before STANDRIDGE, P.J., HILL and SCHROEDER, JJ.

SCHROEDER, J.: David L. Wasinger d/b/a Allegiant Construction and Design (Wasinger) appeals the district court's determination the dispute resolution clause providing for mediation in his construction contract with the Roman Catholic Diocese of Salina (RCDS) should be applied as a binding arbitration agreement. He also argues the district court prematurely granted summary judgment because material facts were in

dispute. We find Wasinger's arguments persuasive. We reverse and remand with directions.

FACTS

In October 2014, Wasinger entered into a contract with RCDS to design and construct a parish rectory for St. Mary Queen of Angels Church in Russell. The contract contained a dispute clause requiring the parties to submit to "binding mediation" if disputes arose that defied informal resolution. The clause also provided the mediator the power to "render a final decision on those unresolved items" at the end of the mediation.

A dispute arose early in the construction process. The parties proceeded to mediation and the mediator issued a final decision. Wasinger did not agree with the mediator's decision and filed a mechanic's lien on the property in August 2015. In June 2016, he filed a motion to foreclose on the mechanic's lien and included additional causes of action for improper use of copyrighted design plans as well as a claim for defamation based on comments made by a priest, Michael Elanjimattathil, during a mass at St. Mary Queen of Angels Church.

RCDS filed a motion for summary judgment arguing the dispute clause was actually an arbitration provision and the mediator's decision was a binding arbitration award. Wasinger responded, arguing the dispute clause reflected the parties' desire to resolve issues through mediation but did not preclude litigation if the mediation failed to reach an amicable result for both parties. Alternatively, he argued the language of the dispute clause was ambiguous. The district court heard oral arguments on RCDS's motion for summary judgment and subsequently issued a memorandum decision. It held the contract did not require arbitration; however, it found "the language as set out in the contract indicates the parties intended to have binding mediation and a final solution established by the mediator." The district court dismissed Wasinger's claims for

3

foreclosure of the mechanic's lien and improper use of the design plans and affirmed the mediator's final decision.

With respect to Wasinger's defamation claim against Elanjimattathil, the district court found the claim was barred because Wasinger failed to raise the issue during mediation. The district court also determined, based on competing affidavits as to where the materials for the building project came from, the contract involved interstate commerce and therefore "trigger[ed] the Federal Arbitration Act, [9 U.S.C. § 1 et seq.,] which pre-empts [*sic*] the Kansas Arbitration Act [K.S.A. 5-401 et seq]." With the contract involving interstate commerce, the district court determined Wasinger had knowledge of the defamatory statements by Elanjimattathil and should have raised his claim against Elanjimattathil during mediation because the Federal Arbitration Act does not preclude tort claims from being resolved by arbitration, whereas the Kansas Arbitration Act does. Accordingly, the district court found Wasinger had waived the defamation claim and dismissed it.

ANALYSIS

*Mediator's Decision Cannot Be Binding*

Wasinger argues the dispute resolution clause did not make the mediator's final decision binding upon the parties or otherwise preclude further litigation of disputed issues. He asserts binding mediation is not recognized by Kansas caselaw, nor is it consistent with the plain meaning of mediation. He contends the dispute clause should be interpreted as requiring the parties to submit to mediation as a prerequisite to filing suit. RCDS responds the contract provided the mediation process and the resulting decision was to be the final answer to resolve the parties' dispute. We find Wasinger's argument persuasive.

4

Appellate courts exercise unlimited review over the interpretation and legal effect of written instruments, and the appellate court is not bound by the lower court's interpretation of those instruments. *Prairie Land Elec. Co-op v. Kansas Elec. Power Co-op,* 299 Kan. 360, 366, 323 P.3d 1270 (2014). The question of whether a written instrument is ambiguous is a question of law subject to de novo review. See *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 964, 298 P.3d 250 (2013). "'The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction.' [Citations omitted.]" *Stechschulte v. Jennings*, 297 Kan. 2, 15, 298 P.3d 1083 (2013).

"An interpretation of a contractual provision should not be reached merely by isolating one particular sentence or provision, but by construing and considering the entire instrument from its four corners. The law favors reasonable interpretations, and results that vitiate the purpose of the terms of the agreement to an absurdity should be avoided." *Levin v. Maw Oil & Gas*, 290 Kan. 928, Syl. ¶ 2, 234 P.3d 805 (2010).

"'It is the duty of courts to sustain the legality of contracts in whole or in part when fairly entered into, if reasonably possible to do so, rather than to seek loopholes and technical legal grounds for defeating their intended purpose. . . . [T]he paramount public policy is that freedom to contract is not to be interfered with lightly.' [Citations omitted.]" *Idbeis v. Wichita Surgical Specialists, P.A.*, 279 Kan. 755, 770, 112 P.3d 81 (2005).

"'In placing a construction on a written instrument, reasonable rather than unreasonable interpretations are favored by the law. Results which vitiate the purpose or reduce the terms of the contract to an absurdity should be avoided. The meaning of a contract should always be ascertained by a consideration of all pertinent provisions and never be determined by critical analysis of a single or isolated provision.' [Citations omitted.]" *In re Estate of Einsel*, 304 Kan. 567, 581, 374 P.3d 612 (2016).

Here, we are called upon to apply and interpret the parties' mediation-based dispute clause which states, in pertinent part:

"Mindful of the high cost of litigation, not only in dollars, but also in time and energy, the parties intend to and do hereby establish the following out-of-court alternate *dispute resolution* procedure to be followed in the event any controversy or dispute should arise out of, or relating to this contract or relating to any change orders or other changes or addendums to this contract.

. . . .

"If this meeting does not produce a resolution, the parties agree to submit to *binding mediation*. Bieberly Architects, overseeing architect of the project, will be the single *mediator*. Both parties acknowledge that if there is one or more disputed items that remain unresolved at the end of the *mediation*, the *mediator* will render a final decision on those unresolved items. A *Mediation* Agreement shall be written and signed by the parties indicating the terms and conditions of the issues upon which the parties have come to an agreement." (Emphasis added.)

The key term at issue in this provision is "binding mediation." The concept of binding mediation is inconsistent with Kansas caselaw and the Kansas Dispute Resolution Act, K.S.A. 5-501 et seq. (KDRA). See *City of Lenexa v. C.L. Fairley Constr. Co.*, 245 Kan. 316, 323-24, 777 P.2d 851 (1989). To resolve this conflict, it is necessary to look at the terms used in the dispute clause and the KDRA for their respective definitions.

- K.S.A. 5-502(e) defines "dispute resolution" as "a process by which the parties involved in a dispute voluntarily agree or are referred or ordered by a court to enter into discussion and negotiation with the assistance of a neutral person."
- K.S.A. 5-502(f) defines "mediation" as "the intervention into a dispute by a third party who has no decision making authority, is impartial to the issues being discussed, assists the parties in defining the issues in dispute, facilitates communication between the parties and assists the parties in reaching resolution."

6

- K.S.A. 5-502(g) defines "arbitration" as "a proceeding in which a neutral person or panel hears a formal case presentation and makes an award, which can be binding or nonbinding upon the parties relative to a prior agreement."

- K.S.A. 5-502(h) defines "neutral evaluation" as "a proceeding conducted by a neutral person who helps facilitate settlement of a case by giving the parties to the dispute an evaluation of the case."

- K.S.A. 5-502(m) defines "neutral person" or "neutral" as "the impartial third party who intervenes in a dispute at the request of the parties or the court in order to help facilitate settlement or resolution of a dispute."

Through their contract, the parties attempted to provide for an "out-of-court alternate dispute resolution procedure." They were not ordered to do so by any court, and it was actually completed, although unsuccessfully, before litigation was filed. Thus, we must interpret their dispute resolution procedure using the term "mediation" as a voluntary agreement to discuss and negotiate with the assistance of a neutral person in the hopes of finding a resolution to the issues presented for mediation. See K.S.A. 5-502(e).

The contract further described the dispute resolution procedure as "binding mediation." What does binding mediation mean under Kansas law? Not what RCDS is claiming. Mediation cannot be considered binding since K.S.A. 5-502(f) defines it as the act of an independent third party entering the dispute and *trying to facilitate* an agreement.

The dispute clause provides that a mediation agreement would be written and signed by the parties indicating the terms and conditions upon which they had come to an agreement. However, it further provides should one or more disputed items remain unresolved at the end of mediation, the mediator would "render a final decision on those unresolved items." To this extent, there is an analytical tension between the agreed role of

7

the mediator and the definition of mediation under the KDRA. Again, by statute, a mediator has no decision-making authority; rather, the mediator is to assist the parties in reaching a resolution. See K.S.A. 5-502(f).

When looking at the dispute resolution clause, given RCDS's argument, one might agree it should be called an arbitration agreement and not an agreement calling for mediation. However, in reconciling the dispute resolution provision as a whole, such a conclusion is unsupported by its plain terms. "The meaning of a contract should always be ascertained by a consideration of all pertinent provisions and never be determined by critical analysis of a single or isolated provision." *In re Estate of Einsel*, 304 Kan. at 581. Here, the parties never use the term arbitration and even if they had, arbitration is not necessarily binding unless specifically agreed to. See K.S.A. 5-502(g). Further, arbitration contemplates a hearing where the parties may present evidence and cross-examine witnesses. See K.S.A. 5-405(b). In arbitration, the arbitrator may hear and determine the controversy based on the evidence produced, may determine any question, and render a final award. See K.S.A. 5-405(a) and (c). The dispute resolution procedure in this contract as set forth contains no provision for the presentation of evidence or cross-examination of witnesses—a key component of arbitration. It does not allow the mediator to decide all of the issues—only those issues unresolved by the parties. It also does not refer to a final award. Based on its plain terms, the dispute clause does not contemplate arbitration. See K.S.A. 5-405 (setting out how an arbitration hearing occurs).

Here, the parties use the terms dispute resolution, mediation, mediator, and mediation agreement. As used in K.S.A. 5-502(e), (f), and (m), and as discussed above, these terms contemplate nonbinding resolution of the dispute based on an agreement by the parties *facilitated* by a neutral third party. Whether the mediator's final decision is binding on the parties can be resolved by the absence of any language to that effect within the dispute clause other than the term "binding mediation." The contract clause fails to contain any language stating the dispute resolution procedure is the exclusive

8

means of dispute resolution. Further, it contains no language stating the mediator's final decision shall be conclusive and binding on the parties. Nor does it state the parties shall be prohibited from litigating issues not resolved through mediation. Based on a complete analysis of the clause and the lack of these terms, we are persuaded the parties did not contract for the mediator's decision to be final, conclusive, and binding. They actually contracted to enter into mediation as a process to possibly resolve any dispute and to eliminate litigation—a great goal, but an unrealistic one given the facts of this case.

Our Supreme Court has held: "'Mediation . . . clauses are not to be treated as arbitration clauses. From a procedural standpoint, arbitration is binding whereas mediation . . . [is] not. Parties signing mediation . . . clauses may not wish to expose themselves to the inherent finality of an arbitral proceeding.' [Citation omitted.]" *City of Lenexa*, 245 Kan. at 323.

Like many words used in the law, they have become terms of art. Arbitration is a term of art as defined by K.S.A. 5-502(g). Mediation is also a term of art as defined by K.S.A. 5-502(f). The terms are not interchangeable and one cannot be inserted in a contract to clarify what the parties now claim they intended. The district court's finding the dispute was fully and finally resolved by binding mediation is inconsistent with the plain language of our statutes and caselaw. Kansas law does not recognize binding mediation and we must adhere to that principle, whereas arbitration *is* generally recognized in Kansas law as a binding resolution of the issues arbitrated. With that understanding, we find Wasinger's position persuasive—the contract provided the parties are bound to enter into mediation in an attempt to resolve the issues without the need for litigation. We cannot find the agreement foreclosed either party from seeking resolution of the issues not resolved by mediation through litigation.

9

*No Cross-Appeal*

RCDS argues the dispute clause should alternatively be interpreted as requiring binding arbitration. The district court rejected this argument and RCDS did not cross-appeal.

> "[O]ur Supreme Court has held that before an appellee may present adverse rulings to the appellate court, the appellee must file a cross-appeal. If an appellee does not file a cross-appeal, the issue is not properly before the appellate court and may not be considered. *Cooke v. Gillespie*, 285 Kan. 748, 755, 176 P.3d 144 (2008); see K.S.A. 60-2103(h). . . . It is necessary that a cross-appeal be perfected in order to obtain appellate review of the adverse decision. If no cross-appeal is filed, the trial court's undisturbed rulings become a final ruling when the case is finally adjudicated. *Grimmett v. S & W Auto Sales Co.*, 26 Kan. App. 2d 482, 484, 988 P.2d 755 (1999)." *Chesbro v. Board of Douglas County Comm'rs*, 39 Kan. App. 2d 954, 969, 186 P.3d 829 (2008).

Because RCDS did not cross-appeal the district court's finding, the issue cannot be raised before this court. Nevertheless, for the reasons previously set forth herein, the dispute clause clearly provided for mediation and not arbitration.

*Language of the Dispute Clause Is Not Ambiguous*

The question of whether a written instrument is ambiguous is a question of law subject to de novo review. See *Waste Connections of Kansas, Inc.*, 296 Kan. at 964. As previously discussed, the dispute clause shows an intent to submit to mediation in an attempt to resolve the parties' dispute. It is not ambiguous. RCDS's desire to apply the agreement as binding arbitration does not make the clause ambiguous as written.

*Premature To Find Contract Involved Interstate Commerce*

The district court found the contract involved interstate commerce and therefore was subject to the Federal Arbitration Act, 9 U.S.C. § 1 et seq., even though it found the contract did not call for arbitration. The district court held the Federal Arbitration Act preempted the Kansas Arbitration Act, K.S.A. 5-401 et seq. The district court also found the Kansas Arbitration Act would have barred Wasinger's defamation claim against Elanjimattathil; the Federal Arbitration Act would not. The district court determined that since Wasinger failed to present his defamation claim to the mediator, he could not file suit on the claim. It erred in doing so.

The district court should not have reached this issue because, as previously discussed herein, the dispute clause does not call for arbitration—it calls for mediation. The district court's finding the Federal Arbitration Act applied is not supported by its other finding that the contract did not call for arbitration. The district court never explained how binding mediation fell within the ambit of arbitration as contemplated by the Federal Arbitration Act or the Kansas Arbitration Act. With the dispute clause calling for mediation, neither the Federal Arbitration Act nor Kansas Arbitration Act apply. Thus, the issue of preemption is irrelevant. Further, the district court decided this issue on summary judgment before discovery had been completed and while material facts were unresolved. The rules governing summary judgment are often stated:

> "'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive

11

issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' [Citations omitted.]" *Armstrong v. Bromley Quarry & Asphalt, Inc.*, 305 Kan. 16, 24, 378 P.3d 1090 (2016).

"[A]n issue of fact is not genuine unless it has legal controlling force as to the controlling issue. A disputed question of fact which is immaterial to the issue does not preclude summary judgment. Stated another way, if the disputed fact, however resolved, could not affect the judgment, it does not present a genuine issue of material fact. [Citation omitted.]

. . . .

"Ordinarily, summary judgment should not be granted until discovery is complete. However, if the facts pertinent to the material issues are not controverted, summary judgment may be appropriate even when discovery is unfinished." *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 934-35, 296 P.3d 1106 (2013).

Here, there was a genuine issue of material fact as to whether the contract involved interstate commerce. There were competing affidavits from Duke Strobel, a member of the church's building committee, and Wasinger. Strobel claimed materials had been purchased from out of state, whereas Wasinger denied purchasing materials from out of state and indicated all of the subcontractors involved were located in Kansas. The district court was required to resolve all facts and inferences in Wasinger's favor. Based on the fact the Federal Arbitration Act does not apply and the conflicting evidence as to genuine issues of fact, summary judgment was premature. See *Armstrong*, 305 Kan. at 24.

Reversed and remanded.